F. L. SMOTHERS, Plaintiff-Appellee, *v.* ARTHUR W. RENANDER, JR., Defendant-Appellant, and MUKAI, ICHIKI, RAFFETTO & MACMILLAN, Defendants, *v.* HAWAIIAN TRUST COMPANY, LTD., Administrator for the Estate of Harry W. Green, Deceased, and as agent for the heirs-at-law of Harry W. Green; and CYRUS L. GREEN, HARRY C. GREEN, MAYMO DAWN SCOTT and IRIS J. FALCOM (heirs-at-law of Harry W. Green, Deceased), Intervenors-Appellees

NO. 7485

CIVIL NO. 4710

SEPTEMBER 11, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Plaintiff-Appellee F. L. Smothers, Defendant-Appellant Arthur W. Renander, Jr., and Intervenor-Appellee Hawaiian Trust Company, Ltd. (HTC), were parties in a non-jury trial to determine the validity of and their respective rights under various oral and written agreements. The trial court found in favor of Smothers and HTC. Renander appeals the award of attorney's fees and costs to the victors.

The specific issue is whether the award of costs, expenses, and attorney's fees was authorized by statute, stipulation, agreement, or

precedent and, if so, how much should be awarded. We hold that some items were authorized and some were not.

On December 30, 1969, Smothers purchased 31.79 acres of land in Kona from Hawaiian Trust Company and Renander; gave HTC a $635,367.18 promissory note secured by a non-recourse purchase money first mortgage; and gave Renander a $174,600.00 promissory note secured by a non-recourse purchase money second mortgage.

On April 30, 1970, Renander purchased an adjoining 26.61 acres from HTC and gave HTC a $497,833.14 note secured by a non-recourse purchase money first mortgage.

On December 29, 1972, by agreement between the parties, Smothers' debt to HTC was reduced to $444,757.03; Smothers' debt to Renander was reduced to $96,400.00; Renander's debt to HTC was reduced to $337,080.49; and new notes and mortgages were signed.

In a letter to Smothers dated May 1, 1976, Renander agreed to release Smothers from his note and second mortgage obligation to Renander if HTC reduced in a specific fashion the payments Renander was required to make on his note and mortgage obligation to HTC.

Thereafter, HTC agreed to reduce Renander's required payments in the specific fashion suggested by Renander. HTC also modified Smothers' December 29, 1972, note and mortgage by a Loan Modification Agreement dated May 7, 1976 (Smothers' LMA).

HTC's agreement to reduce Renander's payments was contained in a Loan Modification Agreement also dated May 7, 1976 (Renander's LMA). Renander signed his LMA on June 10, 1976, at which time he also agreed to subordinate his mortgagee's interest in Smothers' property to HTC's May 7, 1976, mortgagee's interest. However, Renander failed to release Smothers from his note and mortgage obligation or to subordinate the lien of his mortgage.

On May 10, 1977, Smothers sued Renander (and his attorneys, Mukai, Ichiki, Raffetto & MacMillan (MIRM)) to compel Renander to release Smothers from his note and second mortgage obligation. Renander filed an answer denying the May 1, 1976, letter agreement and the May 7, 1976, Renander LMA. He also filed a counterclaim against Smothers, claiming that when Smother negotiated the LMAs he breached a contractual duty owed to Renander, caused

damages,[1] created a constructive trust, and was unjustly enriched.

On February 1, 1978, the trial court granted HTC's motion to intervene as a party plaintiff,[2] and HTC filed a complaint asking the court to declare which agreements were valid and binding and which were not and to enforce the valid ones. Renander filed a counterclaim against HTC, alleging it breached its agreement in the December 29, 1972, HTC-Renander mortgage to permit partial releases of portions of the mortgaged property and that it conspired with Smothers to cause Smothers to breach his fiduciary obligations to Renander.

MIRM interpleaded against Smothers and Renander and, by stipulation, it was excused from the case with the understanding that the court would order one or both parties to pay it $600.00 fees and costs.

After a bench trial, the lower court decided in favor of Smothers and against Renander and ruled that Renander was obligated to release Smothers' note and mortgage, that Smothers' note and mortgage was null and void, that Renander's counterclaims were without merit, and that Renander owed HTC $55,125.00 under the Renander LMA for calendar years 1975, 1976, and 1977. It ordered Renander to pay Smothers $15,600.00 for attorney's fees and $4,154.13 for costs and expenses, to pay HTC $19,000.00 for attorney's fees and $1,608.61 for costs, and to pay MIRM $600.00 for fees and costs.

On appeal, Renander contends that the trial court erred when it awarded fees and costs to Smothers and to HTC.

### SMOTHERS' ATTORNEY'S FEES

Smothers sued to enforce the commitments Renander made to him in the letter dated May 1, 1976. In that letter, Renander agreed that if HTC reduced his obligation in a specific fashion, then he

---

[1] Renander asked the court to give him a reduction in the amount he owed HTC "proportionately equal to that obtained by F. L. Smithers for himself."

[2] Cyrus L. Green, Harry C. Green, Maymo Dawn Scott, and Iris J. Falcom, the heirs of Harry W. Green, jointly moved with HTC and they too were allowed to intervene. Their interest in this case is the same as HTC's.

would release Smothers from his note and mortgage obligation to Renander. The execution of the Renander LMA fulfilled the condition and Renander was then obligated to release Smothers from his obligation. When he refused, Smothers sued to compel him to do so.

Attorney's fees may not be awarded absent statute, agreement, stipulation, or precedent authorizing the allowance thereof. *Yokochi v. Yoshimoto*, 44 Haw. 297, 353 P.2d 820 (1960); 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2675 (1973). In the Smothers-Renander portion of this case, we have no authorizing statute, agreement, stipulation, or precedent.

HRS § 607-17 (1976)[3] (suit on a promissory note or other contract in writing) is not applicable because the May 1, 1976, letter did not provide for attorney's fees. HRS § 607-14 (1976)[4] (suit in the nature of assumpsit) is not applicable because Smothers' claim against Renander is not an action "in the nature of assumpsit."

Smothers' suit against Renander was for specific performance. Specific performance is an equitable remedy of ancient origin. 71 AM. JUR.2d, *Specific Performance*, § 1 (1973). On the other hand, assumpsit is a common law form of action for the recovery of

---

[3] § 607-17 Attorney's fees when provided for in promissory notes, etc. Any other law to the contrary notwithstanding, where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fees the following rates shall prevail and shall be awarded to the successful party, whether plaintiff or defendant:

    (1) Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed;

    (2) Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed;
provided that the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court.

Any law to the contrary notwithstanding, no such attorney's fee shall be allowed to the plaintiff by any court:

    (1) If prior to or at the time the debt was incurred, the debtor did not sign an instrument in writing which provided for the payment of an attorney's fee; and

    (2) If prior to or at the time the debt was incurred, the debtor did sign an instrument in writing which provided for the payment of an attorney's fee and such instrument in writing contains within its principal amount any attorney's fee from a prior debt.

[4] § 607-14 Attorneys' fees in actions in the nature of assumpsit. In all the courts, in all actions in the nature of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court

damages for non-performance of a contract. Black's Law Dictionary 112 (5th ed. 1979); *Allied Amusements v. Glover,* 40 Haw. 92 (1953); *Osorio v. Waterhouse Tr. Co.,* 29 Haw. 376 (1926); *Braham v. Honolulu Amusement Co., Limited,* 21 Haw. 583 (1913); 1 AM. JUR.2d, *Actions,* §§ 11, 13, 14 (1962).

However, a portion of Renander's counterclaim against Smothers is "in the nature of assumpsit" and HRS § 607-14 (1976) is applicable to that portion. As against Renander's counterclaim, Smothers was a winning defendant and as such, for that portion of the case, he is entitled to a reasonable fee not to exceed HRS § 607-14's percentages "upon the amount sued for" by Renander in his counterclaim. Although at the end of the trial Renander admitted he could not prove damages, his request prior to that time was for $100,000.00. We hold that Smothers is entitled to the $3,125.00 maximum attorney's fees authorized by HRS § 607-14 (1976) on Renander's $100,000.00 counterclaim.

Smothers points out that Renander's only objection in the lower court to his request for attorney's fees was that the request was based on HRS § 607-17 (1976) and *Food Pantry v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869 (1978), rather than on HRS § 607-14 (1976) and that Renander conceded that under HRS § 607-14 (1976), he could be required to pay $2,855.52[5] on Smothers' complaint and $2,500.00[6] on Renander's counterclaim.

---

determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:

    25 per cent on first $1,000 or fraction thereof.
    20 per cent on second $1,000 or fraction thereof.
    15 per cent on third $1,000 or fraction thereof.
    10 per cent on fourth $1,000 or fraction thereof.
    5 per cent on fifth $1,000 or fraction thereof.
    2.5 per cent on any amount in excess of $5,000.

The above fees shall be assessed on the amount of the judgment exclusive of costs and all attorney's fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment. The fees provided for by this section shall not be taxed in any action where the plaintiff obtains a judgment which includes attorneys' fees upon a promissory note or other evidence of indebtedness, when the promissory note or other evidence of indebtedness contains a provision for the recovery of costs of collection or attorneys' fees.

    [5] This is the maximum fee authorized by HRS § 607-14 (1976) on $89,220.93, which was the balance due on Smothers' note and mortgage to Renander.

    [6] This is the maximum fee authorized by HRS 607-14 (1976) on $75,000.00, but we do not know what the $75,000.00 relates to.

If the lower court had ruled as agreed by Renander or if Smothers had agreed to accept the fees to which Renander agreed, we would be inclined to hold Renander to his position. However, notwithstanding Renander's qualified objection, Smothers continued to seek an award of attorney's fees under HRS § 607-17 (1976) and the lower court awarded him what he requested. We are not faced with the situation involved in *Jones v. Dieker, a.k.a. Smith,* 39 Haw. 448 (1952). Consequently, we will not hold Renander to the position he stated in the court below.

### *HTC'S ATTORNEY'S FEES*

HTC intervened to protect its position as mortgagee of both parties. It wanted both LMAs validated and enforced, but if not, then it wanted both invalidated and it wanted both December 29, 1972, mortgages validated and enforced. We agree with Renander that HTC sued under the Renander LMA.

On appeal, Renander initially contends that his December 29, 1972, mortgage to HTC was not involved in HTC's suit because it is not part of the Renander LMA because it has not been incorporated therein by reference or otherwise. We disagree. The Renander LMA is an amendment to the Renander-HTC December 29, 1972, note and mortgage and, as such, it is an integral part thereof.

Renander's counterclaim was specifically based on his December 29, 1972, mortgage with HTC.

Renander next contends that the mortgage does not contain his agreement to pay attorney's fees. We disagree.

The mortgage provides, *inter alia:*

THAT upon any failure of the Mortgagor to observe or perform any covenant or condition of this mortgage, or if any suit, proceeding, or other contingency shall arise or be threatened relating to any of the mortgaged property, the Mortgagee may, at the Mortgagee's option, without notice or demand on the Mortgagor, make any advances or incur such expenses or otherwise act as may in the judgment of the Mortgagee seem advisable to protect the security hereunder (without impeachment for the invalidity of any tax, assessment, rate, encumbrance or charge paid in such behalf of the Mortgagee);

THAT all advances, costs or expenses which the Mortgagee

may make, pay or incur under any provision of this instrument, that to the Mortgagee at the Mortgagee's sole option may seem proper or necessary for the protection of the security or any of the rights of the Mortgagee in connection with the mortgaged property, shall be paid by the Mortgagor to the Mortgagee upon demand and bear interest until paid at the rate of twelve per cent (12%) per annum, all of which obligations shall be additional charges upon the mortgaged property and be equally secured hereby; . . .

We hold that the above quoted language is Renander's agreement to pay the attorney's fees HTC incurred in this case.

Renander next contends that the lower court erred in awarding HTC attorney's fees in excess of HRS § 607-17's maximum 25 percent.

We are required to apply HRS § 607-17 (1976) as interpreted by *Food Pantry v. Waikiki Business Plaza, Inc., supra.*

HTC sought and obtained an adjudication of rights and a monetary judgment. *Food Pantry* is inapplicable but HRS § 607-17 (1976) applies and the maximum to which HTC is entitled on its complaint is 25 percent of $55,125.00 or $13,781.25.

However, HTC is also entitled to fees with respect to Renander's counterclaim. Renander sought damages for breach of contract and lost. Thus, with respect to the counterclaim, HTC is entitled to reasonable fees not to exceed 25 percent of the amount Renander sued for in his counterclaim against HTC. The record indicates that Renander never did attach a value to the breach. All he did was suggest that because of the breach he was not in default in the payment of the $55,125.00 which the court found due. Thus, it appears that Renander's counterclaim involved an adjudication of rights in which no monetary liability was at issue. In such case, *Food Pantry* provides that the successful party is entitled to an unlimited reasonable fee for services reasonably and necessarily incurred. Consequently, Renander's counterclaim has no HRS § 607-17 (1976) ceiling. We conclude that the reasonable fees for the counterclaim are no less than $5,300.00 and thus we affirm the award of $19,000.00 attorney's fees to HTC.

Renander next contends that because his mortgage is "nonrecourse," HTC must look to the property rather than to him for payment of the attorney's fees. We disagree.

The mortgage provides, *inter alia:*

> BUT UPON ANY DEFAULT in the performance or observance of any covenant or condition herein or in any Promissory Note contained, or of the terms of any other obligation or indebtedness hereby secured, or if the Mortgagor is adjudicated a bankrupt, then and in either of such events, the Mortgagee shall thereupon give notice of the default to the Mortgagor. The Mortgagee shall not take any steps to foreclose said mortgage until ninety (90) days after Mortgagor has received notice of default, during which time said default may be cured. In the event said default is not cured within said ninety (90) day period, then the whole amount of all indebtedness owing by or chargeable to the Mortgagor under any provision of this mortgage, or intended to be secured hereby, on any and every account, shall, at the option of the Mortgagee, become at once due and payable. In the event of foreclosure, the Mortgagee agrees to accept whatever monies have been paid as liquidated damages and Mortgagor will not be responsible for any deficiency or any other charges whatsoever.

It is true that in the event of foreclosure HTC must look only to amounts previously paid and to the property for satisfaction of all balances due. However, nothing in the mortgage requires foreclosure in the event of default and prior to foreclosure nothing prohibits HTC from pursuing any lawful means to cause Renander to pay all amounts due thereunder.

Renander next contends that the lower court had an insufficient basis upon which to determine that HTC's attorney's fees were reasonable because HTC did not provide the court with an hourly breakdown of the services and because the itemization of services that was provided included attorney travel time.

It is HTC's burden to show the reasonableness of the fee, *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 413 P.2d 242 (1966), pursuant to the guidelines contained in DR 2-106 of the Code of Professional Responsibility incorporated in Rule 16.2 of the Rules of the Supreme Court of the State of Hawaii and that the fee is for services reasonably and necessarily incurred, *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978). However, exercise of discretion by the trial court in determining the amount of fees to award will not be disturbed

upon appellate review except for the abuse thereof. *Sharp v. Hui Wahine, Inc., supra.*

The fact that the trial court was not provided with an hourly breakdown of services is not necessarily grounds for reversal of an award of fees. *Harada v. Ellis,* 60 Haw. 467, 591 P.2d 1060 (1979). In this case, the record on appeal provides ample support for the lower court's award. This case commenced on May 10, 1977. Judgment was not entered until April 6, 1979. It involved a great deal of pretrial and post-trial activity and five trial days.

## HTC'S COSTS

Renander's obligation to pay HTC's costs and expenses arises from the language of their December 29, 1972, mortgage. That language requires Renander to pay "all advances, costs or expenses." Notwithstanding that language, the court may not award any more than is reasonable. However, the limitations which apply when costs are awarded pursuant to statute or rule do not apply when costs are awarded pursuant to an agreement which provides for the award of "all advances, costs or expenses". Consequently, we find no error in the award of costs to HTC.

## SMOTHER'S COSTS

Renander's obligation to pay Smothers' costs arises from HRS § 607-9 (1976) and HRCP, Rule 54(d), as limited by precedent.

Renander contends that the lower court erred when it taxed as costs the attorney's expenses for telephone, photocopy, postage, travel, and copies of depositions, and Smothers' expenses for his travel to and from the trial and for his meals and lodging during the trial. We agree.

The trial court is vested with discretion in allowing or disallowing costs but this discretion should be sparingly exercised when considering whether or not to allow expenses not specifically allowed by statute and precedent.[7] *Harkins v. Ikeda,* 57 Haw. 378, 557 P.2d 788 (1976).

---

[7] The language of HRS § 607-9 (1976) is quite broad but the cases have decided otherwise.

We hold that the lower court erred in taxing as costs the expenses for transportation of an attorney,[8] for copies of depositions taken by other parties,[9] for xerox services,[10] for telephone services,[11] for unspecified postal services,[12] and for Smothers' travel, meals, and lodging during trial. Thus we approve $1,048.00 and disallow $3,106.13.

We affirm the lower court's order except we reverse that portion which requires Renander to pay Smothers more than $3,125.00 for attorneys' fees and $1,048.00 for costs.

*William J. Rosdil* for defendant-appellant.

*Edward M. Sanpei (Ethan D. B. Abbott* with him on the brief; *Hamilton, Gibson, Nickelson, Rush & Moore)* for plaintiff-appellee.

*David Waters (William C. McCorriston* and *Bettina W. J. Lum* on the brief; *Goodsill, Anderson & Quinn)* for intervenors-appellee.

---

[8] 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* §§ 2666, 2676, 2677.

[9] [10] *Turner v. Willis,* 59 Haw 319, 582 P.2d 710 (1978); 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2676.

[11] [12] 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2677.