BISHOP TRUST COMPANY, LTD., as Personal Representative of the Estate of John Moore Allison, Deceased, and SUSAN ALLISON, Plaintiffs-Appellees, Cross-Appellants, *v.* CENTRAL UNION CHURCH OF HONOLULU, a Hawaii corporation, dba ARCADIA, a retirement residence, Defendant-Appellant, Cross-Appellee

NO. 8307

(CIVIL NO. 58989)

JANUARY 17, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant Central Union Church of Honolulu (Church) has appealed from a summary judgment awarded to plaintiff Bishop Trust Company, Ltd. (Bishop) on four of the five counts of its

complaint.[1] Bishop has cross-appealed the refusal of the court to award attorney's fees and costs.

On August 31, 1979, Bishop, as duly appointed personal representative of the Estate of John Moore Allison, deceased (Allison), and Susan Allison, widow of Allison (Susan), filed a five-count complaint against Church based upon an agreement between Church and Allison. In the first four counts, Bishop sought recovery of a portion of an entrance fee paid by Allison to Church entitling him to residency in a retirement residence in Honolulu known as Arcadia.[2] On January 21, 1981, Bishop filed a Motion for Partial Summary Judgment on the first four causes of action. On February 2, 1981, Church filed its own summary judgment motion on all counts. On March 11, 1981, the court entered judgment for Bishop in the sum of $38,373.73,[3] plus interest at eight percent. An order was entered that same date granting Church's motion on count five. The court also ordered each party to bear its own attorneys' fees and costs.

On April 9, 1981, Church filed its Notice of Appeal. On April 23, 1981, the court granted Bishop's motion to extend its time for filing notice of cross-appeal to May 22, 1981, and on that latter date a notice of cross-appeal was filed.

The issues raised by this appeal are: (1) whether Bishop was entitled to judgment as a matter of law; and (2) whether Bishop was entitled to attorney's fees and costs. We find the lower court improperly granted summary judgment, and reverse on Church's appeal. Although our action renders Bishop's appeal moot, we will discuss below the issue raised, since it will remain an issue in further proceedings.

Church is a Hawaii corporation which owns, "sponsors," and operates the retirement residence known as Arcadia. Persons wishing to reside at Arcadia are required to enter into an agreement with

---

[1] Bishop does not appeal the court's granting of summary judgment to defendant on the fifth count of the complaint.

[2] The fifth count sought damages for emotional distress allegedly suffered by Susan Allison and inflicted by Church when it refused to refund the entrance fee to Bishop for the benefit of Allison's estate. Susan Allison died on November 17, 1979. Bishop was substituted in her stead by order entered on March 3, 1981.

[3] Church concedes that if Bishop is entitled to judgment, this figure is correct.

Church titled "Agreement for Resident's Care at Arcadia," and to pay an entrance fee.[4] The amount of the entrance fee is determined by considering the fair market value of the particular apartment to be occupied by the applicant and the applicant's age and life expectancy. Under the agreement, the resident is entitled to occupy a particular apartment for the balance of his life, even though he may live beyond the anticipated life expectancy. Church retains the full entrance fee if the resident dies before the anticipated life expectancy. The agreement terminates on the death of the resident, but provides for cancellation by the parties on certain conditions and for refund upon such cancellation. The cancellation provisions giving rise to the dispute between the parties read as follows:

9. *CANCELLATION AFTER OCCUPANCY:*

(a) *By Demise:* In the case of the demise after occupancy, all obligations of the Corporation under this Agreement have been fulfilled. When two (2) persons are named in this Agreement as the Resident, upon the demise of one, the remaining Resident may continue occupancy of the same apartment at an adjusted monthly service charge, which would be the then current monthly service charge for one person in said apartment. In the event of later cancellation of this Agreement, it shall be considered that fifty per cent (50%) of the original entrance cost has been earned by the Corporation and shall be deducted from any refund due the surviving Resident.

(b) *During First Three Months of Residence:* It is agreed that the first three months of residence shall be considered as an adjustment period. During these three months, either the Resident or the Corporation, after giving two weeks' notice to the other party, may cancel this Agreement. In such event, the Corporation will promptly endeavor to find a new occupant for the Resident's apartment, and from the entrance cost paid by the new occupant will refund to the Resident the amount of original entrance cost paid, minus the total of (1) the $500.00 non-returnable earnest money and an additional

---

[4] It is interesting to note that paragraph 3 of the agreement refers to the payment as a gift or contribution to the Church. (R. 11)

$1,000.00 as liquidated damages, (2) any past due or current monthly charges, and (3) costs necessary to restore the apartment to its planned original status.

(c) *After First Three Months of Residence:* After the expiration of the aforementioned three months adjustment period; the Resident shall have the right at any time (except due to current or knowledge of pending illness), to terminate this Agreement by giving sixty (60) days' notice in writing, and said Agreement shall terminate at the end of the sixty (60) day period. Likewise, the Corporation shall have the right to terminate this Agreement for cause, such cause referring to change in eligibility as in Paragraph 2 (a) or violation of the announced Rules and Regulations of the Corporation, by giving sixty (60) days' written notice in case the Resident does not live up to the spirit, purpose, and rules of ARCADIA, of which the Corporation shall be the sole judge.

10. *CANCELLATION REFUND UNDER PROVISION 9 (c):*

(a) In the event this Agreement is terminated by either of the parties hereto, in accordance with Paragraph 9 (c) above, the Corporation will promptly endeavor to find a new occupant for the apartment, and, from the entrance cost paid by such new occupant, will refund to the Resident the balance of the original entrance cost paid by the Resident which remains after deducting from said original entrance cost paid the total of the following: (1) an amount "earned" by the Corporation, which shall be the equivalent of 1/100th of the original entrance cost for each month of Resident's apartment occupancy, (2) the $500.00 non-returnable earnest money and an additional $1,000.00 as liquidated damages, (3) any past due or current monthly charges, and (4) any costs incurred by the Corporation to restore the apartment to its planned original status. Conditions of Paragraph 9 (a) above shall also apply. If the amounts to be deducted exceed the original entrance cost the Resident shall pay to the Corporation such sum necessary to make the amounts in (2), (3), and (4) above paid in full to the Corporation.

On February 1, 1978, Allison entered into such an agreement

with Church, paid an entrance fee of $44,720, and began residency on April 2, 1978. On August 31, 1978, Allison gave written notice in accordance with paragraph 9(c) of the agreement that he was leaving Arcadia sixty days from September 10, 1978. Allison's reason for leaving was that he was getting married and would be acquiring a fifteen-year-old stepson who would not be allowed to reside at Arcadia.[5] Allison was married on October 13, 1978, moved out on October 19, 1978, and died on October 28, 1978. A new resident moved into the apartment on November 13, 1978. After Church refused to refund a portion of the entrance fee, Bishop and Susan instituted this action.

1.

Church argues that the court below erred in awarding summary judgment to Bishop because the contract provisions are clear that Allison was not entitled to a refund, and retention of the entrance fee is not a forfeiture or against public policy. Church also argues that if the contract is ambiguous, then its correct interpretation is a factual matter genuinely at issue and the court should not have awarded summary judgment. Bishop argues that the contract is ambiguous and requires interpretation, which is a legal question not factual.

In view of our holding, we do not find it necessary to reach the other arguments raised by the parties.

As a general rule, the construction and legal effect to be given a contract is a question of law to be decided by the court, *Reed & Martin, Inc. v. City and County of Honolulu,* 50 Haw. 347, 440 P.2d 526 (1968), *Clarkin v. Reimann,* 2 Haw. App. 618, 638 P.2d 857 (1981). That rule, however, applies only where there is no ambiguity in the language. *Mackenzie v. King,* 30 Haw. 230 (1927); *see also Reed & Martin, Inc. v. City and County of Honolulu, supra.* Where the language of the contract is ambiguous, so that there is some doubt as to the intent of the parties, that intent is a question of fact. *DiTullio v. Hawaiian Insurance & Guaranty Co., Ltd.,* 1 Haw. App. 149, 616 P.2d 221 (1980). Inasmuch as the determination of someone's state of mind usually entails the drawing of factual inferences as to which

---

[5] Church does not question the good faith of Allison's cancellation.

reasonable men might differ, summary judgment often will be an inappropriate means of resolving an issue of that character. 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, *Civil* § 2730 (1973), *cf. De Mund v. Lum,* 1 Haw. App. 443, 620 P.2d 270 (1980).

In the instant case, the overall intent of the agreement was to provide a residence for retired persons in exchange for a fee. The scheme of operation provided to Church a means of off-setting the added expense of residents living beyond their life expectancies by retaining the entrance fees of those who meet an earlier demise. Paragraph 9 of the agreement provides both parties with the method and means of cancelling the agreement after occupancy by the resident.

The agreement is ambiguous, however, because it is unclear what effect the death of a resident within the sixty-day period of 9(c) has once the notice has been given. Church argues that the language of paragraph 10 that "[c]onditions of Paragraph 9(a) shall also apply[,]" indicates an intention to have the agreement terminated by death under any and all circumstances. Under Church's interpretation of the agreement, if a resident gives proper notice under 9(c) but dies during the sixty day period, the agreement is immediately terminated by the death and the refund provisions do not apply.

Under Bishop's interpretation the provisions of 9(c) and 10 completely set forth the rights and obligations of the parties attendant upon a 9(c) cancellation. There is no need to resort to 9(a) except where a surviving "co-resident" has chosen to cancel under 9(c). Bishop contends that the death of a cancelling resident within the sixty day notice period has no effect on the cancellation.

We cannot determine as a matter of law that the interpretation of either party is correct. The rights of the parties turn upon their intent as that may be shown by extrinsic evidence and a genuine issue of material fact exists.[6] Consequently, summary judgment should

---

[6] We note that in Church's answers to plaintiffs' first set of interrogatories, Church indicated that on two occasions refunds were made to the estates of residents who had died within the initial three months of residency. Church indicates this resulted from a change in policy. However, the reasons for that change are pertinent facts that should be resolved.

not have been granted. *De Mund v. Lum, supra.*[7]

2.

Bishop's cross-appeal raises the question whether this action is "in assumpsit" so that HRS § 607-14 would authorize attorney's fees to be taxed against the losing party. The statute reads:

*Attorneys' fees in actions in the nature of assumpsit.* In all the courts, in all actions in the nature of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:

25 per cent on first $1,000 or fraction thereof.

20 per cent on second $1,000 or fraction thereof.

15 per cent on third $1,000 or fraction thereof.

10 per cent on fourth $1,000 or fraction thereof.

5 per cent on fifth $1,000 or fraction thereof.

2.5 per cent on any amount in excess of $5,000. The above fees shall be assessed on the amount of the judgment exclusive of costs and all attorney's fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

. . . .

HRS § 607-14 (1976). Church argues the statute is not applicable because the action is not in assumpsit.

We disagree and hold that the action is "in the nature of assumpsit" and the prevailing party on retrial will be entitled to attorney's fees. *Smothers v. Renander,* 2 Haw. App. 400, 633 P.2d 556 (1981).

We have previously held that "assumpsit is a common law form of action for the recovery of damages for non-performance of a contract." *Id.* 2 Haw. App. 400, 404, 633 P.2d 556, 561. At common

---

[7] The lower court's order granting plaintiffs' motion for partial summary judgment does not specify on what ground the motion was granted. We surmise that the lower court found the agreement to be unambiguous, but concluded that the no-refund provision resulted in a forfeiture and, thus, against public policy and unenforceable.

law, however, the action of assumpsit included more than merely an action for damages arising from breach of contract and would lie on a contract even where a sum certain was sought. Where a contract has been fully performed and nothing remains to be done but to pay the money, a recovery may be had in general assumpsit at the plaintiff's election. *See* 1 AM.JUR.2d, *Actions*, § 11, *et seq.* (1962).

The instant case is clearly on the agreement between Allison and Church and is "in the nature of assumpsit".

With regard to costs, we remind the court below that Rule 54(d), Hawaii Rules of Civil Procedure (HRCP) (1972, as amended), provides that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . ." The award of costs is addressed to the sound discretion of the trial court. *Turner v. Willis*, 59 Haw. 319, 582 P.2d 710 (1978); *Harkins v. Ikeda*, 57 Haw. 378, 557 P.2d 788 (1976); *Dade v. Kuhta*, 3 Haw. App. 89, 641 P.2d 989 (1982). However, the denial of costs to the prevailing party is in the nature of a penalty for some fault on his part in the course of litigation. *Abreu v. Raymond*, 56 Haw. 613, 546 P.2d 1013 (1976). In the absence of a showing of such fault, the trial court is without discretion to reduce or deny costs. *Id.* at 614, 546 P.2d at 1014.

Reversed.

*James H. Case (Burnham H. Greeley, Alan M. Oshima* and *Jerold T. Matayoshi* with him on the briefs; *Carlsmith, Carlsmith, Wichman and Case* of counsel) for defendant-appellant, cross-appellee.

*Carroll S. Taylor (Char, Hamilton, Taylor & Thom* of counsel) for plaintiffs-appellees, cross-appellants.