HAWAIIAN TRUST COMPANY, LIMITED, Plaintiff-Appellee and Cross-Appellant, *v.* REX COWAN, KAYOKO COWAN, also known as KAYOKO TAKATSU, and FRANCIS X. MULLAHEY, Defendants, and JERRY P. BEAM and BEN GROMET, Defendants-Appellants and Cross-Appellees

NO. 8641

(CIVIL NO. H81-2646)

April 19, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In this action, plaintiff Hawaiian Trust Company, Limited (HTCL), the landlord, sought summary possession of certain premises and judgment for unpaid lease rents and other charges. Defendants Ben Gromet (Gromet) and Jerry P. Beam (Beam) appeal from the judgment in HTCL's favor. HTCL cross-appeals on the ground that the trial court's award of attorney's fees is inadequate.[1] We affirm in part and reverse in part.

---

[1] The cross-appeal included another alleged point of error in that the trial court erred in not issuing a writ of possession. However, during oral arguments, counsel for cross-appellant conceded that the matter was moot.

The dispositive issues on appeal are (1) whether the record on appeal is adequate for this court to review the trial court's findings of fact, and (2) whether the trial court erred in the amount of attorney's fees awarded to HTCL. We answer no to the first question, and yes to the second.

HTCL's amended complaint named the following defendants: Rex Cowan (Rex), Kayoko Cowan, also known as Kayoko Takatsu (Kayoko), Beam, Francis X. Mullahey (Mullahey), and Gromet. In count I, HTCL alleged that (1) as trustee for H. William Burgess (Burgess), HTCL was the owner of the Sneeky's Restaurant premises at 6 Marin Street in Honolulu (the Premises), (2) in October, 1980, HTCL entered into a written lease with the Cowans for the Premises, (3) the Cowans had not paid rent and other charges from April 1, 1981, and (4) the Cowans were in breach and had been given notice of the termination of the lease. In counts II, III and IV, it was alleged that (1) Beam and Mullahey claimed to be assignees of the lease from the Cowans, but since HTCL had not consented to such assignment they had no interest in the lease and, alternatively, (2) Beam and Mullahey were liable for rent and other charges for the time they were in possession of the Premises. In count V, HTCL alleged that Gromet was liable for rent and other charges as the guarantor of the Cowans.

Defendants Rex and Kayoko were defaulted. Defendants Beam, Mullahey and Gromet denied the allegations and interposed various affirmative defenses, including the defense of Statute of Frauds.

On August 18 and 19, 1981, a bench trial was held. On October 20, 1981, the court filed its findings of fact and conclusions of law. The judgment was filed on December 4, 1981.

A notice of appeal[2] was timely filed. HTCL's cross-appeal followed.

---

[2] The notice of appeal stated that "Defendants Gromet, Beam and Mullahey" were appealing. However, the briefs indicate that the appellants are Gromet and Beam. During oral arguments, counsel for appellants/cross-appellees stated that Mullahey did not appeal from the judgment and that counsel erred in including Mullahey's name in the notice of appeal.

### I.

Gromet and Beam (appellants) contend that seven of the ten findings of fact and nine of the eleven conclusions of law of the trial court are erroneous. Yet, appellants have failed to include the transcript of the proceedings of August 18 and 19, 1981 as a part of the record on appeal.[3]

Rule 75(b), District Court Rules of Civil Procedure (DCRCP) (1981), provides in part:

If an appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence, or contrary to the evidence, he shall include in the record a transcript of all evidence relevant to such finding or conclusion.

In *Marn v. Reynolds,* 44 Haw. 655, 663, 361 P.2d 383, 388 (1961), our supreme court stated that the findings of a trial court "cannot be passed upon in review, in the absence of the evidence upon which the findings were based," and dismissed the appeal when the record failed to include a trial transcript. *See also Thomas v. Computax Corp.,* 631 F.2d 139 (9th Cir. 1980); *Brattrud v. Town of Exline,* 628 F.2d 1098 (8th Cir. 1980). Our supreme court has left a trial court's finding undisturbed where the appellant had failed to order the proper transcripts of proceedings. *State v. Goers,* 61 Haw. 198, 600 P.2d 1142 (1979). *See also McDonough Marine Service, Inc. v. M/V Royal Street,* 608 F.2d 203 (5th Cir. 1979).

Appellants claim that even without the trial transcript, the documentary exhibits in evidence which constitute part of the record on appeal are sufficient to convince us that the trial court's findings are clearly erroneous. Consequently, there has been no violation of Rule 75(b), DCRCP. We disagree.

---

[3] Rule 75(b), District Court Rules of Civil Procedure (1981), requires an appellant to file and serve "a statement of the issues he intends to present on the appeal" if the entire transcript is not to be included. Appellants Gromet and Beam failed to file and serve such statement. However, we do not consider this point since appellee Hawaiian Trust Company, Limited failed to move for dismissal of the appeal and was not misled or prejudiced. *See Island Creek Coal Co. v. Local Union No. 1827,* 568 F.2d 7 (6th Cir. 1977).

## A.

Appellants contend that due to the existence of an old unexpired lease for the Premises, the trial court's finding that there was a new lease between HTCL and the Cowans commencing October 1980 was clearly erroneous. Appellants state that the old lease signed by Burgess, as landlord, Brick Oven Pie Shops, Inc. (Brick Oven), as tenant, and Gromet and four others, as guarantors,[4] had been renewed and was not due to expire until April 30, 1982. Section 27.02 of the old lease provided that "no subsequent alteration, amendment, change or addition to this lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them." There being no written amendment or termination in evidence, appellants contend that the old lease remained viable.

From the documentary evidence alone, we cannot find and conclude that the old lease remained binding and could not be replaced by a new lease. The provisions in the old lease, the other documentary evidence and reasonable inferences therefrom lead to other logical conclusions. For example, section 23.01 of the old lease provides that the landlord may terminate the lease if the tenant abandons the Premises or defaults in the performance of its obligations thereunder. The documentary evidence shows that in August and September 1980, Kayoko rather than Brick Oven paid the lease rents and other charges.[5] A reasonable inference from this fact is that Brick Oven assigned the old lease or sublet the Premises. However, the documentary evidence includes neither a written assignment or sublease nor a written consent of the landlord, as required by section 17.01 of the old lease. A fair inference is that Brick Oven breached the old lease permitting HTCL to terminate the old lease and enter into a new lease. Thus, without the trial transcript, we cannot determine whether the old lease remained viable.

---

[4] Court's Exhibit 1.

[5] Exhibits G and H.

B.

Appellants claim that the Statute of Frauds, Hawaii Revised Statutes (HRS) § 656-1 (1976 & Supp. 1982), precluded the existence of an actionable new lease for the Premises.[6]

Exhibit B is a letter dated October 2, 1980 from Gromet to Burgess, responding to Burgess' proposal for a new five-year lease for the Premises. In Exhibit B, Gromet stated that Rex "is agreeable to the new rent schedule" if it commenced on January 1, 1981. Gromet requested that Burgess "draw up a new lease" if he approved Gromet's letter. The trial court found that Exhibit B was "either an offer or a counteroffer."[7] The court also found that by a telephone call, "Burgess accepted Gromet's offer or counteroffer."[8] Exhibit C is the new lease signed by Kayoko only.

In pertinent part, HRS § 656-1 provides:

No action shall be brought and maintained in any of the following cases:

\* \* \* \* \*

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;

\* \* \* \* \*

Unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized.

---

[6] Hawaii Revised Statutes § 656-1 (1976 & Supp. 1982) applies to lease of land. *See Henriques v. Kalokuokamaile,* 23 Haw. 706 (1917).

[7] Finding of Fact No. 2.

[8] Finding of Fact No. 3.

Appellants argue that HRS § 656-1 precluded the enforcement of the new lease (Exhibit C) because Exhibit B was not signed by the Cowans, the parties "to be charged therewith." Gromet who signed Exhibit B was to be a guarantor, and not a tenant, on the new lease. If Gromet was the agent for the Cowans, HRS § 656-1 is unsatisfied since there is no writing by the Cowans lawfully authorizing him to act for them. *See Honolulu Memorial Park v. City & County,* 50 Haw. 189, 436 P.2d 207 (1967).

We observe that appellants have a tunnel vision concerning the documentary evidence in the case. The status of Exhibit B alone is not determinative of the case. HTCL sought to enforce the new lease against the Cowans, as the tenants, and against Gromet, as a guarantor. While Exhibit B is determinative of Gromet's liability as a guarantor, the liability of the Cowans does not depend solely on this exhibit. Kayoko signed the new lease. The trial court found that the checks dated January 5, 1981 (Exhibit D), January 30, 1981 (Exhibit E) and March 11, 1981 (Exhibit F), each in the amount of $852.80, were "all persuasive items of evidence that the new lease was in effect [sic]."[9] Each of the checks was signed by Kayoko for Sneeky's, No. 6 Marin Street. If Rex was an owner of Sneeky's, Kayoko may have acted for him in making the payments and Rex impliedly ratified the new lease.

It is clear that part performance will take an oral agreement out of the Statute of Frauds "where there has been substantial reliance by the party seeking to enforce the contract." *McIntosh v. Murphy,* 52 Haw. 29, 34, 469 P.2d 177, 180 (1970). *See also Island Holidays, Inc. v. Fitzgerald,* 58 Haw. 552, 574 P.2d 884 (1978). The part performance must be such that to allow a promisor to repudiate would constitute an injustice upon the promisee. *See Perreira v. Perreira,* 50 Haw. 641, 447 P.2d 667 (1968); Restatement (Second) of Contracts § 139 (1981).

It follows from the trial court's finding of payments made by Kayoko for Sneeky's that HTCL entered into a new lease

---

[9] Finding of Fact No. 5.

since the lease rents were at the rate set forth in Burgess' proposal (Exhibit A). If Kayoko acted for herself and Rex, the tenants under the new lease would be the Cowans. The new lease replaced the old lease and thereby, as a matter of law, the four guarantors of the old lease, other than Gromet, were released. To permit a repudiation of the new lease by the Cowans would constitute an injustice to HTCL.

The foregoing discussion clearly shows that we cannot determine that the trial court's findings of fact are clearly erroneous without the transcript of the proceedings. The documentary evidence alone is insufficient. Therefore, we are compelled to leave the trial court's findings and conclusions undisturbed.

## II.

Both appellants and HTCL assert that the amount of attorney's fees awarded to HTCL is erroneous. Appellants claim that the amount is too much, and HTCL argues that it is insufficient. We agree with appellants.

The trial court found that there was a new lease. Section 23.01 of the new lease (Exhibit C) provides, "In case of any default by Tenant in the performance of the terms, covenants and agreements herein contained, the Tenant shall pay to the Landlord any and all costs incurred in connection with such default, including attorney's fees." Such contractual provision is governed by HRS § 607-17 (1976).[10] In essence, HRS §

---

[10] HRS § 607-17 (1976) provides in pertinent part:

Any other law to the contrary notwithstanding, where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fee the following rates shall prevail and shall be awarded to the successful party, whether plaintiff or defendant:

(1) Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed;

(2) Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed;

provided that the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court.

607-17 places a ceiling on the award of attorney's fees of twenty-five per cent of the judgment amount, exclusive of costs and attorney's fees, or the amount claimed plus interest, but not to exceed what is deemed reasonable by the court. *See Keller v. La Rissa, Inc.,* 60 Haw. 1, 586 P.2d 1017 (1978); *Lennen & Newell v. Clark Enterprises,* 51 Haw. 233, 456 P.2d 231 (1969); *Wohlschlegel v. Uhlmann-Kihei, Inc.,* 4 Haw. App. ___ (No. 8040, April 8, 1983).

Citing *Food Pantry v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869 (1978), HTCL claims that the ceiling of twenty-five per cent is not applicable in this case. In *Food Pantry,* the court concluded "that HRS § 607-17 does not limit the recovery to which the lessor may otherwise be entitled under the lease to twenty-five per cent of the nominal damages which . . . should have been awarded for the lessee's breach of its covenant." 58 Haw. at 621, 575 P.2d at 880. *See also Loyalty Development Co., Ltd. v. Wholesale Motors, Inc.,* 61 Haw. 483, 605 P.2d 925 (1980).

We do not find *Food Pantry* to be applicable in this case. In *Smothers v. Renander,* 2 Haw. App. 400, 407, 633 P.2d 556, 562 (1981), we held that where a party seeks and obtains "an adjudication of rights and a monetary judgment," *Food Pantry* is not applicable but the twenty-five per cent limit of HRS § 607-17 applies. Here, HTCL sought to adjudicate its rights under the new lease and obtain summary possession and a money judgment, and the judgment amount exceeding $5,000 is not nominal. Clearly, *Smothers v. Renander, supra,* is applicable.

Our computation indicates that the trial court's award of attorney's fees to HTCL exceeded the twenty-five per cent limit. The judgment in favor of HTCL was "the amount of $5,116.92 for rentals and other charges through August, 1981 plus interest at 12% per annum on the delinquent rents until paid and plus $75.39 (being the remaining 1/3 of the 1981 fire insurance premium)." We have determined that the twenty-five per cent for attorney's fees should be applied to the amount of $5,523.66, which consists of the following:

Rentals and other charges          $5,116.92
Interest at 12% per annum

| | |
|---|---|
| to date of judgment (approximate) | 331.35[11] |
| 1/3 of 1981 fire insurance premium | 75.39 |
| Total | $5,523.66 |

The maximum amount of attorney's fees would be twenty-five per cent of $5,523.66 or $1,380.91, rounded to $1,381.00.

The trial court awarded HTCL "reasonable attorneys [sic] fees and costs in the amount of $2,371.09." HTCL incurred costs of $245.09.[12] Thus, the actual attorney's fees amounted to $2,126.00 and exceeded the allowable maximum by $745.00.

We affirm the judgment, except as to attorney's fees.

Remanded for modification of the judgment in conformance with this opinion.

*Jack C. Morse* (*Morse & Nelson,* of counsel) for defendants-appellants and cross-appellees Ben Gromet and Jerry P. Beam.

*Paul Maki* (*Woo, Kessner & Duca,* of counsel) for plaintiff-appellee and cross-appellant.

---

[11] We computed interest through November 30, 1981 at the rate of 12% per annum as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| April | 1981 rent of | $ | 852.80 | = | $ | 68.22 |
| May | 1981 rent of | | 936.00 | = | | 65.52 |
| June | 1981 rent of | | 936.00 | = | | 56.16 |
| July | 1981 rent of | | 936.00 | = | | 46.80 |
| August | 1981 rent of | | 936.00 | = | | 37.44 |
| Other charges of | | | 520.12 | = | | 57.21 |
| | | | $5,116.92 | | $331.35 | |

[12] *See* Affidavit of Paul Maki of August 28, 1981. (Record at 251-53.)