Joseph G. **BLACKBURN**; Mary Louise Blackburn, Special Administrator of the Estate of Joseph G. Blackburn, Deceased, Plaintiffs–Appellees,

v.

Sheryl **GOETTEL–BLANTON**, Defendant–Appellant.

No. 88–15645.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 31, 1989.

Decided March 5, 1990.

**96**

Marvin Johnson, Phoenix, Ariz., for defendant-appellant.

Jay M. Fidell, Bendet, Fidell, Sakai & Lee, Honolulu, Hawaii, for plaintiffs-appellees.

Before SNEED, KOZINSKI and THOMPSON, Circuit Judges.

KOZINSKI, Circuit Judge:

This is a case of litigation run amok. A minor dispute that long ago should have been resolved by the parties without the help of lawyers has been transformed into an attorney-fee-generating machine. While yielding only $6,654 in damages, it has resulted in more than $133,000 in billings for plaintiffs alone. We consider, *inter alia*, whether Hawaii law permits an attorney's fees award to exceed the underlying judgment.

1. The district court initially entered judgment in plaintiffs' favor for damages of $7,421 and prejudgment interest of $17,616.27. *Blackburn v. Goettl-Blanton*, No. 86-0505 (D. Haw. Jan. 22, 1988) (Judgment). The judgment was later amended, however, when plaintiffs stipulated to the smaller amounts. *Blackburn v. Goettl-Blanton*, No. 86-0505 (D. Haw. Oct. 27, 1988) (Order).

## Facts

There's no doubt about it: Sheryl Goettl-Blanton breached a contract. Four years ago, she agreed to buy a condominium for $245,000, signed the appropriate forms and made a small down payment. She even moved in. A month later, she changed her mind and refused to go through with the deal. The would-be sellers, Joseph and Mary Louise Blackburn, sued Blanton under the contract, as was their right. After much procedural wrangling, the case came to trial and the district court awarded the Blackburns damages of $6,654, prejudgment interest of $14,707.14,[1] costs of $14,262.56 and attorney's fees of $61,250.

On appeal, Blanton challenges the award of attorney's fees.[2] She contends that the amount awarded was excessive, and that the district court erred in denying her motions for a more detailed evidentiary hearing and for sanctions. While most of her contentions lack merit, we agree with defendant that the fees award exceeded Hawaii's statutory ceiling.

## Discussion

Hawaii law prohibits awards of attorney's fees except where authorized by statute, stipulation or agreement. *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.*, 58 Haw. 606, 575 P.2d 869, 878 (1978). Here, the Deposit Receipt, Offer and Acceptance (DROA) signed by the parties stated that "the prevailing party shall be entitled to recover all costs incurred *including reasonable attorney fees*" (emphasis added). That agreement is tempered, however, by Hawaii Revised Statutes § 607-17 (1985), which provides, in relevant part, that where a contract "provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed." Thus, we can affirm the attorney's fees award of $61,250 only if three require-

2. Defendant also asserts, somewhat off-handedly, that the costs award was improper; however, she presents no arguments to support this contention. As the contract expressly covers costs and the amount awarded does not appear unreasonable, we affirm the district court's award of costs.

ments are met: (1) the Blackburns were the prevailing party;[3] (2) the amount awarded was reasonable;[4] and (3) the amount does not exceed the statutory twenty-five percent ceiling.

## I

Blanton does not dispute that plaintiffs satisfy the first requirement; she focuses her attack on the second—the reasonableness of the award. We review the reasonableness of the district court's award of fees for abuse of discretion. *See Sharp v. Hui Wahine, Inc.*, 49 Haw. 241, 413 P.2d 242, 245 (1966). The thrust of Blanton's argument is that this case was so simple— her breach of contract so self-evident—that plaintiffs could not legitimately have amassed attorney's fees in excess of $133,-000.[5] Although we are strongly tempted by the logic of this argument, we must reject it.

This case presents clearly the dilemma faced by individuals who must seek redress through our legal system for concrete, yet modest, legal claims. Under a breach of contract theory, the plaintiffs were entitled only to the benefit of their bargain. This did not amount to much: When defendant breached the agreement, the condominium was still worth more or less what she had agreed to pay for it; all plaintiffs were entitled to recover, therefore, was the roughly $6000 it cost them to undo some minor physical alterations to the property and to find a new buyer. Yet, as anyone who has dealt with the law knows only too well, a $6000 claim is hardly worth litigating; it often costs more than that to hire a lawyer just to file a complaint. As here, the solution often adopted is to pile on a lot of big-ticket claims.

Thus, plaintiffs sued not only for breach of contract but also for intentional misrepresentation, negligent misrepresentation, willful and reckless breach, harassment and abuse of process. By the time they were finished, they were asking for more than $1 million, an amount more nearly worth fighting about. Defendant, for her part, further raised the stakes by removing the case to federal court, filing a counterclaim and heaping on every conceivable procedural and substantive defense. What had started out as a small contract squabble had suddenly become a major case.

Litigation has its own perverse logic and, the ante once having been raised more or less by mutual assent, the parties were locked into a wide-ranging and costly battle. The Blackburns sought extensive (and expensive) discovery as to *why* defendant had breached the contract. While irrelevant to their underlying contract claim, this discovery was relevant to their tacked-on claim for punitive damages. When defendant resisted, plaintiffs filed repeated motions to compel discovery and for sanctions.

Eventually, plaintiffs prevailed only on their contract claim, recovering approximately $6000 in damages, plus interest. They spent considerably more than that in litigating the case, however, and, given the scope of the claims and counterclaims, the district court concluded that a $61,250 award was reasonable. On this record, we are unable to conclude that the district court abused its discretion in awarding this amount of attorney's fees.[6]

---

3. Section 607-17 uses the term "successful party." This difference in wording has no relevance to our analysis. *See* n. 6 *infra.*

4. Reasonableness is a requirement both of the contract and of section 607-17, which provides that "the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court."

5. As defendant states in her brief, "[t]his was a typical, relatively minor, action for breach of a contract. The defendant had clearly reneged on her written agreement and the law provided the plaintiffs a clear remedy." Opening Brief for Appellant at 27. Defendant fails to acknowledge the irony of this admission. Given the self-evident nature of her breach, one wonders why she spent tens of thousands of dollars opposing the claim rather than offering to pay damages promptly upon committing the breach.

6. Defendant might have argued that the portion of plaintiffs' attorney's fees spent litigating tort claims are not recoverable as the DROA provides for recovery of costs of "a law suit arising out of this contract." While this clearly encompasses plaintiffs' breach of contract claim, it may or may not cover the tort claims.

## II

■ Plaintiffs, however, face an even more serious obstacle in recovering attorney's fees in this litigation, namely the twenty-five percent ceiling of section 607–17. Section 607–17 is a curious statute: it sets out a pithy, seemingly bright-line rule, yet its meaning is unclear. The section establishes a twenty-five percent ceiling on attorney's fees awards, but fails to identify the figure to which the percentage applies —presumably, either the judgment, the amount sought in the complaint or the value of the contract. The district court used the last of these figures; it awarded the Blackburns fees of $61,250, *i.e.*, twenty-five percent of the $245,000 contract price of the condominium.

We are unable to agree with the district court's construction of the statute. Our review of Hawaii caselaw leads us to the conclusion that section 607–17 limits an award of fees to twenty-five percent of the judgment. Two cases are particularly instructive: *Lennen & Newell, Inc. v. Clark Enters.*, 51 Haw. 233, 456 P.2d 231 (1969), and *Hawaiian Trust Co. v. Cowan*, 4 Haw. App. 166, 663 P.2d 634 (1983). In *Lennen*, the state supreme court determined that section 607–17 limited an award of fees to twenty-five percent of the "debt," there defined as " 'all that is due to a man under any form of obligation or promise.' " 456 P.2d at 236 (citation omitted). The Blackburns claim that defendant's debt to them was $245,000 (the purchase price of the condominium), but that is misleading because, before trial, plaintiffs sold the condominium to another buyer. The true measure of defendant's debt, then, was the amount the Blackburns forfeited by selling the condominium to someone other than defendant. As it turned out, plaintiffs suffered very little damage; the district court found that at the time of defendant's breach the property was still worth $245,-

000. Defendant's debt, therefore, was limited to special damages, which consisted solely of the amount expended by the Blackburns in repairing the property and finding a new buyer—*i.e.*, $6,654 plus interest. Consequently, under *Lennen*'s debt rationale, section 607–17 limits plaintiffs' fees award to twenty-five percent of the judgment amount.

■ *Hawaiian Trust* fully supports this interpretation. While not a decision of the Hawaii Supreme Court, it cites to and expands on *Lennen*. The court there stated:

HRS § 607–17 places a ceiling on the award of attorney's fees of twenty-five per cent of the *judgment amount*, exclusive of costs and attorney's fees, or *the amount claimed plus interest*, but not to exceed what is deemed reasonable by the court.

663 F.2d at 638 (emphasis added). In other words, if plaintiffs prevail, as here, the court may award them fees of up to twenty-five percent of the judgment. However, if a defendant wins—in which case there is no money judgment—the court can award her up to twenty-five percent of the amount prayed for in the complaint. We observe that this is the identical scheme set out in HRS § 607–14 (1985), governing attorney's fees awards in actions in the nature of assumpsit: "The above fees shall be assessed on the amount of the judgment exclusive of costs and all attorney's fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment."

Here, plaintiffs prevailed; consequently, they were entitled to reasonable fees not to exceed twenty-five percent of the judgment. The judgment consisted of $6,654 in damages, plus $14,707.14 in prejudgment interest. *See Lennen*, 456 P.2d at 236; *Hawaiian Trust*, 663 P.2d at 638–39. Accordingly, the total judgment was $21,-

---

Moreover, even if the district court had determined that the tort claims did arise out of the contract, defendant could have argued that plaintiffs did not prevail on these claims. Both the DROA and section 607–17 have a prevailing party limitation. *See* pp. 96–97 & n. 3 *supra*. While the Hawaii Supreme Court has declared that fees can be recovered "where a party prevails

on the disputed main issue, even though not to the extent of his original contention," *see Food Pantry*, 575 P.2d at 879, a strong argument might have been made that the inflated tort claims, not the relatively minor contract claim, were the focus of plaintiffs' lawsuit. As defendant did not raise any of these arguments, we do not consider them.

361.14, and the fees award may not exceed $5,340.29. On remand, the district court may award any reasonable amount up to this ceiling.

 The district court made no finding as to the amount of fees incurred by plaintiffs in defending against Blanton's counterclaim, which sought a declaration that defendant had no obligation to the Blackburns under the contract. The Blackburns successfully defended against the counterclaim and are therefore entitled to some additional award of attorney's fees. *See Smothers v. Renander*, 2 Haw.App. 400, 633 P.2d 556, 562 (1981). Because Blanton did not seek monetary relief in the counterclaim, the twenty-five percent ceiling of section 607–17 does not apply. *See Food Pantry*, 575 P.2d at 880; *Smothers*, 633 P.2d at 562–63. Rather, plaintiffs are "entitled to an unlimited reasonable fee for services reasonably and necessarily incurred" in defense of the counterclaim. *Smothers*, 633 P.2d at 563. However, as the counterclaim was merely the flip side of plaintiff's claim for breach of contract, it introduced no new issues into the case and was rarely addressed by the parties or the court. *See* RT (10/26/88) at 40–41. It seems highly unlikely, therefore, that plaintiffs incurred anything more than nominal attorney's fees in this defense. In any event, the district court shall determine the amount on remand if there is a dispute on this point.

### III

Blanton raises two other contentions, neither of which merits much discussion. First, she requests a more detailed evidentiary hearing on the subject of attorney's fees. We deny the request: One such hearing has already been held, and any further debate as to whether plaintiffs' counsel exaggerated billable hours would be pointless as our ruling has drastically circumscribed plaintiffs' award. Blanton also appeals the district court's failure to sanction the Blackburns under Fed.R.Civ. P.11. We reject this argument out of hand; as the district court aptly stated: "If anybody were to get sanctions, I'd give

them to the plaintiff[s]." RT (10/26/88) at 25.

### Conclusion

Lawsuits have become particularly inappropriate devices for resolving minor disputes. They are clumsy, noisy, unwieldy and notoriously inefficient. Fueled by bad feelings, they generate much heat and friction, yet produce little that is of any use. Worst of all, once set in motion, they are well-nigh impossible to bring to a halt.

This case is not atypical: A relatively minor dispute mushroomed into a full-blown war of attrition in which both sides suffered substantial casualties. The district judge called it "a cold turkey case" and he was right. Yet the parties trudged through four years of expensive and frustrating litigation all the same. As is quite often the case when litigation ends, neither side will be satisfied with the result we reach today.

We vacate the award of attorney's fees and remand to the district court. On remand, the court is instructed to award the Blackburns reasonable attorney's fees not to exceed $5,340.29 on their breach of contract claim, and reasonable fees for defending against defendant's counterclaim.