**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000739
15-MAR-2023
08:13 AM
Dkt. 247 SO**

NO. CAAP-20-0000739

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

RQ, Plaintiff-Appellant, v.
KQ, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 10-1-2770)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Hiraoka and Wadsworth, JJ.)

Self-represented Plaintiff-Appellant RQ (**Father**) appeals from the January 11, 2021 "Order Re: Hearing on [Father's] Motion Filed March 6, 2020 and [Defendant-Appellee KQ (**Mother**)]'s Motion Filed March 13, 2020" (**January 11, 2021 Order**), entered in the Family Court of the First Circuit (**Family Court**).[1] Father also challenges the Family Court's February 22, 2021 Findings of Fact and Conclusions of Law (**FOFs/COLs**).

Father and Mother were divorced in 2012. The parties' August 1, 2012 Divorce Decree (**Divorce Decree**) awarded Mother sole legal and physical custody of the parties' then-minor children, with visitation to Father. In 2016, the parties entered into a Stipulated Order for Post-Decree Relief (**Stipulated Order**), which, *inter alia*, awarded Mother and Father joint physical custody of their minor children with a visitation/time-sharing schedule, and provided that "both parents expressly agree to bear their own burden of child support."

---

[1] The Honorable Brian A. Costa presided.

Father filed motions on March 6, 2020, August 26, 2020,[2] and September 1, 2020, seeking sole legal and physical custody of the parties' remaining minor child (**Child**),[3] child support, and "enforcement" of the Stipulated Order. On March 13, 2020, Mother filed a motion for post-decree relief (**March 13, 2020 Motion**), seeking sole physical custody of Child and child support. Following hearings on June 10, 2020, July 22, 2020, and October 30, 2020, the Family Court entered the January 11, 2021 Order, which, *inter alia*, awarded Mother sole physical custody of Child, subject to Father's visitation rights, and ordered that Mother retain sole legal custody of Child.

On appeal, Father appears to contend that the Family Court erred by: (1) determining there was no cause of action against Mother for criminal custodial interference, and ordering a temporary parenting plan without a custody investigation or a hearing on the merits; (2) failing to later reinstate equal time-sharing of Child during a pandemic and improperly relying upon the parties' 2012 Divorce Decree; (3) subjecting Father to "wrongful detainment and witness intimidation"; (4)(a) refusing to enforce an interim "Protection from Parental Disputes Order," (b) denying Father's motions without an evidentiary hearing, and (c) awarding Mother sole physical custody of Child and ruling on other custody-related matters without sufficient evidence; and (5) ordering Father to give Mother, in lieu of child support, the monthly social security payments he receives for Child's benefit.

Initially, we note that Father has not provided a sufficient record for our review of his contentions on appeal. Without transcripts of the relevant proceedings, this court is left with an incomplete record of what transpired.[4] See HRAP

---

[2]    The record indicates that Father later withdrew his March 6, 2020 and August 26, 2020 motions.

[3]    The parties' other children were at least 18 years old at the time of the Family Court's rulings at issue in this appeal.

[4]    We further note that Father's opening brief fails to comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) and (7) in material respects. Nonetheless, as Father is self-represented, we address Father's arguments "to the extent they can reasonably be discerned." Wagner v. World Botanical Gardens, Inc., 126 Hawaiʻi 190, 193, 268 P.3d 443, 446 (App. 2011).

Rule 10(b)(1)(A) and (b)(3); State v. Hoang, 93 Hawaiʻi 333, 336, 3 P.3d 499, 502 (2000) (holding that defendant's failure to include arraignment transcript in record precluded review of claimed error); Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995) ("The burden is upon appellant in an appeal to show error by reference to matters in the record, and he or she has the responsibility of providing an adequate transcript." (brackets omitted) (quoting Union Building Materials Corp. v. The Kakaako Corp., 5 Haw. App. 146, 151, 682 P.2d 82, 87 (1984))). Nonetheless, we attempt to address Father's contentions to the extent possible.

Upon careful review of the record and the briefs submitted by Father,[5] and having given due consideration to the arguments advanced and the issues raised on appeal, as well as the relevant statutory and case law, we resolve Father's contentions as follows.

(1) In his first point of error, Father appears to contend that the Family Court erred at the June 10, 2020 hearing in two respects. First, Father argues that the Family Court erred in determining there was no "cause of action" for Mother's "violation of HRS § 707-727." HRS § 707-727 (2014), which is part of Hawaii's Penal Code, provides in part that a person commits the offense of custodial interference in the second degree if "[t]he person intentionally or knowingly takes, entices, conceals, or detains a minor knowing that the person has no right to do so[.]"

At the outset, Father has not shown how this alleged error was preserved at the June 10, 2020 hearing and, without a transcript, we cannot determine what, if anything, was said or determined regarding this issue. In any event, this appeal involves post-decree divorce matters, not a criminal charge against Mother for custodial interference. See Schmidt v. Carroll, CAAP-15-0000400, 2016 WL 2940850, at *1-2 (Haw. App. Apr. 29, 2016) (SDO) (rejecting father's argument that the Family Court erroneously disregarded mother's violation of the custodial

---

[5] Mother did not file an answering brief pursuant to HRAP Rule 28(c).

interference statute, where, *inter alia*, the case was not an appeal of a criminal proceeding, and Father failed to provide any Hawaiʻi precedent or persuasive authority that the family court was obligated in custody proceedings to treat Mother's relocation as a violation of the custodial interference statute).[6]  Thus, Father has not met his burden of demonstrating error by the Family Court.

Second, Father appears to argue that at the June 10, 2020 hearing, the Family Court improperly changed the parties' custody arrangements by ordering a temporary parenting plan that provided Father "parenting time" with Child every Saturday morning to Monday morning.[7]  Specifically, Father appears to argue that the Family Court's temporary parenting plan was improperly based "solely" on Mother's counsel's uncorroborated "testimony," which raised a "collaterally estoped claim." However, absent a transcript of the June 10, 2020 hearing, we cannot determine precisely what happened at the hearing and thus have an insufficient record to review this contention.

Father also appears to contend that the Family Court violated his due process rights by imposing the temporary parenting plan without ordering a custody investigation into Mother's child abuse allegations and relying on Mother's counsel's "testimony . . . without requiring any evidence or a hearing on the merits[.]"

---

[6]     Father also appears to argue that Mother's "refusal to honor" the Stipulated Order "is a violation of HRS § 584-17(c)."  HRS chapter 584, Hawaii's Uniform Parentage Act, concerns actions to establish parent-child relationships (*e.g.*, paternity actions) and the enforcement of duties arising from such relationships.  See Child Support Enf't Agency v. Doe, 98 Hawaiʻi 58, 63, 41 P.3d 720, 725 (App. 2001).  Again, without a transcript, we cannot determine what, if anything, was said or determined regarding this statute during the June 10, 2020 hearing.

For the same reason, we are unable to review Father's apparent argument that Mother and her counsel violated HRS § 571-81(a) and HRS § 710-1077(g) by acting "in contempt for" the Family Court's January 29, 2020 order dissolving a temporary restraining order in a separate case, Case No. 1DA20-1-000102.  In any event, the January 29, 2020 order does not order Mother to do (or not do) anything, and this appeal does not arise from Case No. 1DA20-1-000102.

[7]     Although Father argues that the Family Court erred in awarding Mother "injunctive relief,"neither the June 10, 2020 hearing minutes nor the Family Court's July 14, 2020 order (**July 14, 2020 Order**), which memorialized the court's June 10, 2020 oral orders, reference injunctive relief; rather, Father appears to refer to the Family Court's "temporary parenting plan."

Father has a fundamental liberty interest in the care, custody, and control of Child, and the State may not deprive him of this interest without providing a fair procedure for deprivation. See In re Doe, 99 Hawaiʻi 522, 533, 57 P.3d 447, 458 (2002); Doe v. Doe, 120 Hawaiʻi 149, 168, 202 P.3d 610, 629 (App. 2009). "At its core, procedural due process of law requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest." Doe, 120 Hawaiʻi at 168, 202 P.3d at 629 (quoting State v. Bani, 97 Hawaiʻi 285, 293, 36 P.3d 1255, 1263 (2001)).

Father does not cite any authority requiring the Family Court to order a custody investigation in these circumstances. HRS § 571-46(a)(4) (2018) provides in part that "[w]henever good cause appears therefor, the court may require an investigation and report concerning the care, welfare, and custody of any minor child of the parties." (Emphasis added.) The Family Court has "considerable discretion in requiring investigations and reports concerning the care, welfare, and custody" of the parties' minor child. Turoff v. Turoff, 56 Haw. 51, 55, 527 P.2d 1275, 1278 (1974); see also Tri-S Corp. v. W. World Ins. Co., 110 Hawaiʻi 473, 489, 135 P.3d 82, 98 (2006) (stating that "may" implies discretion). Father does not claim he requested an investigation or otherwise point to where in the record he made such a request. Father thus fails to demonstrate that the Family Court erred by not ordering a custody investigation.

Moreover, our review of the due process issue is hindered by an incomplete record. Court minutes indicate that the Family Court's June 10, 2020 hearing included "testimony" by Mother and Father.[8] Absent a transcript, however, we cannot determine precisely what occurred during the hearing. As it is Father's responsibility to provide an adequate record, Father has not met his burden of demonstrating error.

In any event, Father does not assert, and the record does not indicate, that the Family Court relied on the temporary

---

[8] Court minutes also indicate that the Family Court held a July 22, 2020 hearing that included "testimony" by Mother and Father, and an evidentiary hearing on October 30, 2020.

parenting plan (or resulting circumstances) to ultimately award Mother sole physical custody of Child. Rather, the FOFs indicate that the court's custody ruling was based on an October 12, 2020 Order for Protection (**Protective Order**) entered against Father in a separate case, Case No. 1DA-20-1-002043 (**Protective Order Case**),[9] as well as the court's own findings in this case that Father engaged in family violence and did not overcome that finding:

> 43. [The Family Court in the Protective Order Case] found that Father committed domestic abuse against the Minor Child, and this Court finds that is a sufficient change in circumstances to warrant a change in physical custody based upon the best interest of the Minor Child.
>
> . . . .
>
> 45. The Court finds that Father has engaged in physical and emotional abuse of the Minor Child, Father has a poor relationship with the Minor Child, Father does not put the Minor Child's needs above his own, the Minor Child does not feel safe in Father's care, Father has an anger management problem and would benefit from participating in treatment for anger management, and the parties would benefit from engaging in parenting classes and other services offered by [Child Welfare Services].
>
> 46. The court finds that Father engaged in family violence with Mother and the Minor Child as defined in HRS § 571-2, and that the presumption contained in HRS § 571-46(a)(9) is applicable.
>
> 47. This Court finds that pursuant to HRS § 576-46(a)(9), Father did not meet his burden in overcoming the finding of family violence. Based upon Mother's Order for Protection and the records and files therein, and the credible testimony and evidence presented herein, sole physical custody shall be awarded to Mother.

On this record, Father has failed to establish error by the Family Court.

(2) In his second point of error, Father appears to contend that the Family Court erred at the July 22, 2020 hearing by failing to amend the temporary parenting plan to reinstate "equal time-share/joint custody in the face of a global pandemic," and that such refusal constitutes "wrongful emancipation" and/or "child neglect." However, absent a transcript of the July 22, 2020 proceeding, we have an

---

[9] The Honorable Natasha R. Shaw presided. The Protective Order, granted to Mother on behalf of Child, was set to expire on April 12, 2021, and provided, *inter alia*, that Father have supervised visitation with Child.

insufficient record to review this contention.

Father also appears to contend that the Family Court erred on July 22, 2020, by relying on the Divorce Decree to "reinstat[e] sole legal and physical custody" to Mother. Father appears to argue that the Divorce Decree is subject to Hawaiʻi Family Court Rules (**HFCR**) Rule 60(b)(3)[10] relief "as shown by the records originating since 01/31/2012" and by Mother's testimony on October 30, 2020, in which she allegedly "admitted to perjury reaching back to the date of 08/01/2012[.]"

Father's argument lacks merit for three reasons. First, the record does not show that the Family Court granted Mother sole legal and physical custody on July 22, 2020. Second, absent transcripts of the relevant hearings, we have an insufficient record to review Father's contention, and he has not met his burden of demonstrating error. Third, Father has failed to show that he timely sought and was entitled to HFCR Rule 60(b)(3) relief from the Divorce Decree.

(3) In his third point of error, Father argues that (a) "prior to the conclusion of" the Family Court's July 22, 2020 hearing, the Family Court unlawfully "detained" him by prohibiting the parties from leaving the courtroom until they signed an "interim order,"[11] and (b) while Father was "unlawfully detained," Mother's counsel engaged in "witness intimidation" by instructing Father to make an accounting of gifts from Mother and recommending he seek employment to support "an upcoming judgment for child support[.]"

Father does not point to, nor can we find, any part of the record supporting his arguments.[12] Father's third point of

---

[10] While Father cites Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 60(b)(3), which is inapplicable to family court proceedings, see HRCP Rule 81(a)(4), it appears Father refers to HFCR Rule 60(b)(3), which is substantially identical to HRCP Rule 60(b)(3).

[11] The "interim order" appears to be the Family Court's July 22, 2020 order, which reflects Father's signature approving the order as to form.

[12] We thus do not address Father's contention that the Family Court's and/or opposing counsel's alleged actions constitute violations of HRS § 710-1071, 18 U.S.C. § 242, 42 U.S.C. § 1985, the Americans with Disabilities Act, and his first, fourth, fifth, and fourteenth amendment rights under the U.S. Constitution.

error thus lacks merit.

(4) In his fourth point of error, Father appears to argue that the Family court erred at the October 30, 2020 hearing in three respects.[13/] First, Father argues that the Family Court infringed upon his religious freedom, due process, and equal protection rights by improperly refusing to enforce its "Protection from Parental Disputes" order, which was attached to the July 14, 2020 order, and which prohibited each party from interfering with the other's parent-child relationship. Specifically, Father (a) contends that on October 30, 2020, Mother "testified to acts in violation of" the Protection from Parental Disputes order, and (b) describes alleged events that "clearly show" Mother violated the order. But Father fails to provide supporting record citations or a transcript and thus fails to meet his burden to demonstrate error.

Second, Father argues that the Family Court erred by "repeatedly" denying Father's motions without an evidentiary hearing. But Father fails to specifically identify the motions or provide further argument. This point is thus waived. See HRAP Rule 28(b)(7).

Third, Father contends that the Family Court issued "irregular rulings unsupported by the evidence and made in the face of [Mother's] acts of statutory violations and fraud on the court." To this end, as best as we can discern, Father appears to assert three arguments:

(a) First, Father appears to challenge the sufficiency of the evidence supporting the Family Court's decisions: to award Mother sole legal and physical custody of Child, with visitations by Father; to deny Father's child support request; and to order Father to subscribe to "My Family Wizard" and pay for and attend anger management classes. Sufficient evidence exists when "the record contains 'substantial evidence' supporting the family court's determinations . . . ; the testimony of a single witness, if found by the trier of fact to have been credible, will suffice." In re Doe, 95 Hawaiʻi 183, 196, 20 P.3d 616, 629

---

[13/] Father appears to refer to the Family Court's oral rulings on October 30, 2020, which were memorialized in the January 11, 2021 Order.

(2001) (citation omitted).

Here, the Family Court heard the testimonies of Father, Mother, and the parties' eldest son (**Eldest Son**), reviewed Father's exhibits, and judicially noticed and considered, among other things, the records and files in the Protective Order Case. It appears from the FOFs/COLs that the Family Court implicitly found Mother more credible than Father at least as to the testimony the court expressly relied on. Additionally, the FOFs, including FOFs 28-37 and 41-47, support the legal rulings challenged by Father:

> 28. Father testified to using physical discipline on the Minor Child when he believes it is appropriate to address her behavior. The Court finds that Father's use of physical discipline is excessive in light of the Minor Child's age and maturity level and reason for the discipline.
>
> 29. Regarding Mother's Order for [P]rotection [in the Protective Order Case], Father testified on October 30, 2020 to getting into an argument with the Minor Child over the issue of school work. Father believes as a parent he has the discretion to use physical discipline when he sees fit.
>
> 30. Minor Child does not currently feel safe with Father.
>
> 31. Mother wants to get services in place in both households. Mother requested an order for protection for a period of six months so that Minor Child could feel safe and receive appropriate services and counseling. Minor Child is receiving therapy through Kaiser Permanente, and Mother is participating in weekly at home therapy sessions with the Minor Child regarding physical abuse and Minor Child's fear of Father.
>
> 32. Mother is receiving services and therapy through Domestic Violence Action Center.
>
> 33. Mother requested sole physical custody in part because of an escalation in physical altercations between Father and [Second Son], who was eighteen years old at the time of the October 30, 2020 hearing. Mother fears for the Minor Child's safety when in the presence of Father.
>
> 34. Mother heard Father and [Second Son] get into an altercation when she was speaking to [Second Son] on the phone. Mother called the police to go to Father's home. When Mother arrived at Father's home, Mother was informed by the police that Father had [Second Son] in a choke-hold on the ground when the police arrived at the home. [Second Son] was seventeen at the time of the altercation, but turned eighteen May 17, 2020.
>
> 35. Mother witnessed Father physically discipline the children at various times in the past, which she did not agree with.

> 36. Father was physically abusive toward Mother in the past.
>
> 37. Father threatened to have Mother arrested numerous times over text messages, and Mother is afraid of Father.
>
> . . . .
>
> 41. The relationship and communication between Mother and Father has deteriorated, and they cannot effectively co-parent together.
>
> 42. Father's concerns throughout the trial were focused on what he believes are his rights as a parent and what he perceives as being unfair to him, rather than what is in the best interest of the Minor Child.
>
> . . . .
>
> 44. Mother has sole legal custody over the Minor Child, and the Court does not find a sufficient change in circumstances to warrant a change in legal custody to Father.

See FOFs 43, 45-47 quoted supra. Further, absent the relevant transcripts, "this court has no basis to determine that the Family Court's findings of fact were clearly erroneous and, therefore, the Family Court's findings and conclusions will not be disturbed." Ramirez v. Ramirez, No. CAAP-18-0000682, 2019 WL 4954976, at *2 (Haw. App. Oct. 8, 2019) (SDO) (citing Hawaiian Tr. Co. v. Cowan, 4 Haw. App. 166, 172, 663 P.2d 634, 638 (1983)).

Nonetheless, Father appears to argue that the Family Court's rulings conflict with (1) Father's trial exhibits, (2) Father's and Eldest Son's testimonies, and (3) Mother's testimony "admitting to acts" violating the Protection from Parental Disputes order. Again, the lack of hearing transcripts hinders this court's review of Father's contentions. In any event, judgments "based on conflicting evidence will not be set aside where there is substantial evidence to support the trier of fact's findings." State v. Mattiello, 90 Hawaiʻi 255, 259, 978 P.2d 693, 697 (1999) (brackets omitted) (quoting Tsugawa v. Reinartz, 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974)); see also Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) ("[A]n appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." (quoting Doe, 95 Hawaiʻi at

10

190, 20 P.3d at 623)). As discussed above, the FOFs support the rulings challenged by Father, and we have no basis to determine that the FOFs were clearly erroneous.

Father also appears to argue that "newly discovered evidence" — a November 25, 2020 "Notice of [Child Welfare Services] Disposition" (**Disposition**) — disproves Mother's abuse allegations against him in the Protective Order Case and thus undermines the Family Court's rulings in this case and shows that Mother and her counsel committed fraud. However, Father does not claim he sought relief from the Family Court in this case based on the Disposition. In any event, this court already held, in Father's appeal from the Protective Order, that the Disposition is not a basis to set aside the Protective Order. See KQ v. RQ, CAAP-21-0000081, 2022 WL 855981, at *5 (Haw. App. Mar. 23, 2022) (SDO).

(b) Second, Father appears to contend that Mother misrepresented her financial information, as evidenced by Mother's testimony and her 2020 reported gross income. Again, without a transcript, we cannot review Father's assertions about Mother's testimony. Moreover, Father does not show how any alleged misrepresentation affected or conflicted with the challenged rulings by the Family Court.[14]

(c) Finally, Father appears to claim "insufficient service" of Mother's March 13, 2020 Motion because Mother failed to support the motion with financial documents; Father further asserts that the Family Court nonetheless found, over Father's objection, that Mother's "declaration" was "sufficient proof." Specifically, Father appears to argue that Mother did not comply with the Family Court's scheduling order, which required that each party provide the other with certain income documents.

Father does not cite where in the record he objected to Mother's alleged failure to provide him with documents, and we

---

[14] Father contends that Mother's declared 2020 gross income appears lower than her 2012 income. Mother's 2020 Income and Expense Statement declares a higher gross income than that in 2012, though her attached Child Support Guidelines Worksheet (**CSG Worksheet**) appears to list her take home pay as gross income. This discrepancy is immaterial insofar as the Family Court's CSG Worksheet used Mother's (higher) gross income amount from the Income and Expense Statement.

are not obligated to search the record for information that should have been provided by Father.  See Haw. Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 480, 164 P.3d 696, 738 (2007) (stating that an appellate court "is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions" (quoting Lanai Co. v. Land Use Comm'n, 105 Hawaiʻi 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004))).  On this record, Father has failed to establish error by the Family Court.

5) In his fifth point of error, Father contends that the Family Court erred in ordering him to provide Mother the monthly $389.00[15]/ social security payment he receives for Child's benefit on account of Father's disability (**derivative payments** or **dependency benefits**),[16]/ in lieu of $77 monthly child support. Father appears to assert three supporting arguments, which we conclude lack merit.

First, Father contends that Mother did not seek "a judgment for child support" and that she testified on October 30, 2020, that she did not want to seek child support.  However, the record does not include a transcript of the October 30, 2020 hearing, and does not otherwise support this contention.

Second, Father appears to contend that the Family Court failed to "fairly consider":  (a) Father is disabled with a household income below the poverty level, and (b) "the standard of living of both parents and child" and costs of "reasonable necessities."  However, Father's income and disability, by themselves, do not entitle him to keep derivative payments, see infra, and the Family Court's CSG Worksheet includes a Standard of Living Adjustment.

Third, Father appears to argue that the Family Court erroneously deviated from the Hawaiʻi Child Support Guidelines

---

[15]/    While Father states the social security payment for Child's benefit is $363, this difference is immaterial because the Family Court required Father to give Mother the social security payment of $389 "or the actual amount of the check for the child if it is a different amount."

[16]/    Although the January 11, 2021 Order refers to the payments as "SSI moneys," Father's arguments and the Family Court's FOFs/COLs appear to indicate that the benefits received on Child's behalf are dependency benefits.

(**HCSG**) and "wrongly assumed and articulated that" the derivative payments "were made available monthly to [Father] by Social Security on behalf of [Father] maintaining custody of a child[.]" Father states that the derivative payments "are NOT provided on the basis of custody but [are] made available for a disabled individual with eligible dependents for reasons including, but not limited to, to assist with a relationship and/or to provide gifts to a child, irrespective of custody, for an individual surviving with economic and physical incapacitation" and are "only made available to a disabled person who is receiving supplemental security income (SSI) or social security disability insurance (SSDI) and who qualifies for [derivative] payments with eligible children[.]"

Preliminarily, the available record does not reflect that the Family Court "articulated" that Father should receive derivative payments only if he has custody. Additionally, the HCSG neither expressly includes nor excludes derivative payments as possible "exceptional circumstances" warranting deviation from child support amounts calculated in the CSG Worksheet.

In any event, Father's argument appears to be based on the erroneous premise that derivative payments are "only made available to a disabled person . . . ." Under federal law, social security "child's insurance benefits" are payable to minor children who are dependents of an individual entitled to disability or "old-age" benefits. 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350. Child's insurance benefits may be made payable to a "representative payee," who must spend the funds for the child's "use and benefit," *i.e.*, the child's "current maintenance," including costs "incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." 42 U.S.C. § 405(j)(1)(A);[17] 20 C.F.R. 404.2010(b) ("Generally, if a

---

[17] 42 U.S.C. § 405(j)(1)(A) provides, in part:

**Representative payees**

(1)(A) If the Commissioner of Social Security determines that the interest of any individual under this subchapter would be served thereby, certification of payment of such individual's benefit under this subchapter may be made,

(continued...)

beneficiary is under age 18, we will pay benefits to a representative payee."); 20 C.F.R. §§ 404.2035(a) (describing representative payee responsibilities); 404.2040(a) (describing beneficiary's "use and benefit").  A "representative payee" may be, among others, a child's custodial or non-custodial parent. See 20 C.F.R. § 404.2021(c) (enumerating categories of preferred payees for beneficiaries under age 18, including a custodial parent, followed by a non-custodial parent).  Thus, while derivative payments may be sent to a non-custodial parent, such payments are not, as argued by Father, "only made available to a disabled person[.]"

Moreover, the HCSG not only recognizes that derivative payments based on a parent's disability may be received by the other parent, it also indicates that the disabled parent has no ownership interest in such payments.  Specifically, the HCSG provides, *inter alia*, that (1) "dependency benefit" amounts may be credited against the disabled parent's child support obligation if the benefit is paid to the other parent or other representative payee, and (2) any such benefit amount exceeding the child support obligation is a "gift" to the subject child. 2014 HCSG, at 16-17, https://ag.hawaii.gov/ocsh/files/2019/02/ DOC093.pdf; see also Child Support Enf't Agency v. Doe, 92 Hawaiʻi 276, 284-86, 990 P.2d 1158, 1166-68 (App. 1999) (holding that while social security payments (for child's benefit due to non-custodial parent's disability) received by custodial parent exceeded the child support obligation amount, custodial parent need not repay non-custodial parent the excess because "the amount of social security disability payments in excess of a child support obligation shall be deemed a gratuity to the child or children involved").  Accordingly, Father's argument lacks merit.

_____

[17]/  (...continued)
regardless of the legal competency or incompetency of the individual, either for direct payment to the individual, or for his or her use and benefit, to another individual, or an organization, with respect to whom the requirements of paragraph (2) have been met (hereinafter in this subsection referred to as the individual's "representative payee").

14

**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

For the reasons discussed above, we affirm the January 11, 2021 "Order Re: Hearing on [Father's] Motion Filed March 6, 2020 and [Mother's] Motion Filed March 13, 2020," entered in the Family Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, March 15, 2023.


On the brief:                          /s/ Katherine G. Leonard
                                       Presiding Judge
RQ,
Self-represented Plaintiff-
Appellant.                             /s/ Keith K. Hiraoka
                                       Associate Judge


                                       /s/ Clyde J. Wadsworth
                                       Associate Judge