962 P.2d 374

**Rodney PIEDVACHE, Plaintiff–Appellant,**

v.

**Edward C. KNABUSCH and Terry M. Knabusch, Defendants–Appellees.**

No. 20174.

Supreme Court of Hawai'i.

Aug. 27, 1998.

As Amended Oct. 21, 1998.

Robert D. Triantos and Charles M. Heaukulani of Carlsmith, Ball, Wichman, Case & Ichiki, on the briefs, Kailua Kona, for plaintiff-appellant Rodney Piedvache.

Mark Van Pernis and William I. Zimmerman of Van Pernis Smith & Vancil, on the briefs, Kailua Kona, for defendants-appellees Edward C. Knabusch and Terry M. Knabusch.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The plaintiff-appellant Rodney Piedvache (Rodney)[1] appeals from the judgment of the District Court of the Third Circuit, Hāmākua Division, entered on September 12, 1996. Piedvache's sole point of error on appeal is that the district court erred in awarding the defendants-appellees Edward C. Knabusch and Terry M. Knabusch (the Knabusches) attorney's fees in the amount of $9,515.84. Because we agree with Rodney that the district court abused its discretion in granting an award in excess of that allowed by Hawai'i Revised Statutes (HRS) § 607–14 (Supp. 1994),[2] we vacate the judgment and remand for the entry of a corrected judgment.

---

1. This action was originally brought in the names of Rodney Piedvache and his wife, Carol Piedvache. Carol Piedvache's death during the pendency of the lawsuit was indicated in the record by a "Suggestion Of Death Upon The Record Under Rule 25(a)(1)" filed on May 13, 1996.

2. At the time of the filing of the complaint in this case, HRS § 607–14 provided in relevant part:

**Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

Where the note or other contract in writing provides for a fee of twenty five per cent or more, or provides for a reasonable attorney's fee, not more than twenty five per cent shall be allowed.

Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed.

. . . .

The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment. This section has been amended once, in immaterial aspects, during the pendency of this appeal. *See* 1997 Haw. Sess. L. Act 132, § 2 at 252–53.

## I. BACKGROUND

On June 15, 1995, Rodney Piedvache and Carol Piedvache (the Piedvaches) filed their "Complaint For Damages" in the District Court Of The Third Circuit, Hāmākua Division, against the Knabusches. The complaint alleged that, on or about September 2, 1993, the Piedvaches and the Knabusches entered into a Deposit, Receipt, Offer and Acceptance (DROA) agreement for the sale of a portion of the Knabusches' subdivided property located at the Ka'āpahu Homesteads in Hāmākua on the Island of Hawai'i. One of the terms of the DROA was that the Knabusches "were expressly obligated, at their sole cost, 'to have electric poles brought to the mauka boundary along Ho['o Ka[']ahu Rd. of Lot A.'" As of the closing date regarding the sale of the property, the Knabusches had not yet had the electrical poles installed, but represented that they would complete the project within a reasonable time. The parties proceeded with the sale, and escrow closed on September 30, 1993. However, the complaint alleged, the Knabusches did not complete their performance in a timely fashion.[3]

The complaint alleged claims for relief for (1) breach of contract, (2) bad faith, (3) intentional and/or negligent infliction of emotional distress, and (4) punitive damages. For each cause of action, the Piedvaches claimed that the Knabusches had caused "damages in an amount to be proven at trial." No specific amount of damages was alleged.[4]

Apparently, the case proceeded to a bifurcated trial, which was conducted on several dates between May 9, 1995 and July 11, 1996, the issue of liability being litigated first.[5] The only contested issue was whether the Knabusches had taken an unreasonable amount of time in performing their obligation to install the electrical poles as specified in the DROA.

On August 22, 1996, the district court filed its "Findings Of Fact, Conclusions Of Law, And Order Dismissing Plaintiffs' Claims With Prejudice." The district court's findings and/or conclusions were as follows:

1. The real estate transaction which forms the basis for this case was structured so that there was a closing of the property sale before the Sellers (Defendants KNABUSCH) had completed their obligation to provide electrical power to the property sold. The buyers (Plaintiffs PIEDVACHE) could have set a deadline for the completion of this process. They chose not to do so. After the closing, the sellers began in a timely fashion the process of obtaining electrical power. There was no requirement that the sellers utilize the shortest[,] most expensive process in doing this. Given the circumstances, eighteen months was not unreasonable.

2. Plaintiff is disingenuous in his claim that he could not proceed with his home construction without permanent power. People build homes using portable generator power all the time. There are areas on this island where portable generators are the only source of power. Plaintiffs' position would have been easier to understand if Plaintiff Rodney Piedvache had not been a longtime employee of HELCO on Oahu.

RA at 179. Accordingly, the district court entered judgment in favor of the Knabusches and against the Piedvaches.

On August 6, 1996, the Knabusches filed a motion for attorney's fees and costs in the total amount of $9,685.84 pursuant to HRS § 607–14 and District Court Rules of Civil Procedure (DCRCP) Rule 54(d).[6] The Kna-

---

3. The complaint alleges that the Knabusches did not complete performance until "nearly two and one-half years following the subject transaction." However, the parties' pre- and post-trial memoranda suggest that both agreed that the time period between the signing of the DROA and installation of the electric poles was actually eighteen months.

4. We note that HRS § 663–1.3(a) (1993), entitled "'[a]d damnum' clauses prohibited," provides in relevant part that "in any action based on tort

... to recover damages for personal injuries ...,
no complaint ... shall specify the amount of damages prayed for but shall contain a prayer for general relief...."

5. The transcripts of that trial do not appear to have been made part of the record on appeal.

6. DCRCP Rule 54(d) (1996) provides in relevant part:

(d) **Costs.** Except when express provision therefor is made either in a statute or in these

busches attached copies of their attorney's bills relating to the litigation, which indicated that they had incurred a total of $9,577.64 in attorney's fees and $108.20 in costs. Rodney opposed the motion, arguing: (1) that the Knabusches were not entitled to attorney's fees or costs because the lawsuit sounded primarily in tort; or, alternatively, (2) that the amount of attorney's fees being sought exceeded the amount allowed by HRS § 607–14.

In a "decision" filed on August 29, 1996, the district court found that the Knabusches' request for fees and costs was "reasonable" and that the motion should be granted. An order granting the motion for attorney's fees and costs was filed on September 12, 1996. The district court's judgment was filed the same day. In its judgment, the district court awarded the Knabusches $9,515.84 in attorney's fees, $90.00 in "Sheriff's Fees," and $80.00 in "Witness Fees."[7] Rodney filed a timely appeal from the judgment.

## II. STANDARD OF REVIEW

■ "This court 'review[s] the ... denial and granting of attorney's fees under the abuse of discretion standard.'" *Eastman v. McGowan*, 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997) (quoting *Weinberg v. Mauch*, 78 Hawai'i 40, 52–53, 890 P.2d 277, 289–90, *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995)). *See also Coll v. McCarthy*, 72 Haw. 20, 28, 804 P.2d 881, 887 (1991). The same standard applies to this court's review of the amount of a trial court's award of attorney's fees. *See First Hawaiian Bank v. Smith*, 52 Haw. 591, 592, 483 P.2d 185, 186 (1971); *Sharp v. Hui Wahine, Inc.*, 49 Haw. 241, 244, 413 P.2d 242, 245, *reh'g denied*, 49 Haw. 257, 414 P.2d 82 (1966); *Powers v. Shaw*, 1 Haw.App. 374, 377, 619 P.2d 1098, 1101 (1980). "An abuse of discretion occurs if the trial court has clearly ex-

ceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (internal quotation signals and citations omitted).

## III. DISCUSSION

Rodney argues that the district court abused its discretion in awarding the Knabusches $9,515.84 in attorney's fees, relying on the twenty-five percent "ceiling" on attorney's fees in contract cases contained in HRS § 607–14. Rodney asserts that the district court erred because (1) inasmuch as (a) there was no judgment, (b) no specific amount prayed for in the complaint, and (c) Rodney was precluded from proving damages at trial because it was bifurcated, there was no "legally cognizable basis upon which to make the mandatory 25% calculation," or, in the alternative, (2) the award of attorney's fees should have been capped at $5,000.00, because the maximum judgment he could have received, had he prevailed, was $20,000.00 due to the jurisdictional limit of the district court.

HRS § 607–14 provides that an award of attorney's fees may not exceed twenty-five percent of "the amount sued for if the defendant obtains judgment." As Rodney suggests, the statute does not expressly instruct the courts as to how to calculate an award of attorney's fees when no precise monetary amount is sought in the pleadings. As the Knabusches point out, however, the appellate courts have previously addressed this issue with regard to a predecessor statute, HRS § 607–17.

HRS § 607–17 provided for a maximum award of attorney's fees of twenty-five percent of a contract or note "to the successful

---

rules, costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs....

7. We note that, although the district court's earlier "decision" and "order" indicated that it had granted the Knabusches' motion for attorney's fees and costs in its entirety, amounts awarded by the judgment do not match the totals reflected in the attorney's bills submitted by the Knabusch-

es. As indicated above, the bills indicated that the Knabusches had paid a total of $9,577.64 in attorney's fees and $108.20 in costs. Moreover, there was no indication in the bills that the Knabusches had paid $90.00 in "Sheriff's Fees." Rodney has appealed the amount of the attorney's fees, as discussed *infra*, but not the amount of costs awarded. Accordingly, we do not reach the issue flagged herein.

party, whether plaintiff or defendant[.]" In 1993, HRS § 607–17 was repealed and its provisions incorporated into HRS § 607–14. *See* 1993 Haw. Sess. L. Act 200, §§ 1–2 at 305–06; Hse. Conf. Comm. Rep. No. 127, in 1993 House Journal, at 932 ("Your Committee ... finds that § 607–17, Hawaii Revised Statutes, should be eliminated, and its provisions incorporated within § 607–14.").

In construing HRS § 607–17, this court ruled in *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 621, 575 P.2d 869, 879–80 (1978), that

> [s]uccessful defendants are not denied, by HRS § 607–17, the benefits of a contractual provision allowing an attorney's fee. By providing for an award to a successful defendant in an action on a promissory note, the legislature made it plain that an attorney's fee may be awarded although the defendant is not otherwise entitled to a money judgment against the plaintiff. *We believe that it is equally clear that this statute was not intended to render inoperative a contract governing the allocation of expenses and attorney's fees in litigation which involves only an adjudication of rights and in which no monetary liability is in issue.*

(Emphasis added.) In *Food Pantry,* the

> litigation was instituted by [a] lessee to obtain a declaratory adjudication of the question whether the lessor was required to consent to assignments and subleases. The lessor, in its answer and counterclaim, raised for adjudication the issue of whether these transactions constituted a material breach of the lease, and, if they did, whether the lessor was entitled[,] as a consequence[,] to terminate the lease. Success by the lessor on these basic issues did not and could not result in a money judgment to which the twenty-five per cent limitation could be applied.

*Id.* On the foregoing facts, this court held that the twenty-five percent cap on attorney's fees, as set forth in HRS § 607–17, did not apply and remanded the case for determination of the amount of attorney's fees, instructing the trial court to award all fees that were "reasonably and necessarily incurred." *Id. See also Amfac, Inc. v. Waikiki*

*Beachcomber Inv. Co.,* 74 Haw. 85, 132–35, 839 P.2d 10, 34–35 (holding that, where the plaintiff was seeking a declaration that it had performed its obligations under an indemnification agreement, HRS § 607–17's twenty-five percent cap on attorney's fees did not apply), *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992).

Thus, this court's precedent makes clear that HRS § 607–17 and, by implication, its successor statute, HRS § 607–14, do not arbitrarily deny an award of attorney's fees to a defendant merely because the circumstances of the lawsuit provide no "legally cognizable basis upon which to make the mandatory 25% calculation." On the contrary, where it is impossible to determine what the judgment would or might have been had the plaintiff prevailed (*e.g.,* in declaratory judgment actions), the defendant may be awarded all of his or her reasonable attorney's fees.

However, it is clear that, in enacting HRS § 607–17 (and in amending HRS § 607–14 to incorporate the provisions of HRS § 607–17), the legislature's purpose was to place *some* limit on the amount of attorney's fees that a prevailing party could reasonably recover. As the Intermediate Court of Appeals noted in *Thornley v. Sanchez,* 9 Haw.App. 606, 620–21, 857 P.2d 601, 608–609 (1993):

> The legislative history of HRS § 607–17 indicates clearly ... that the statute was intended to prohibit the collection of excessive attorney's fees....
>
> HRS § 607–17 had its genesis in Act 194, § 1, 1955 Haw. Sess. Laws 171, which imposed a thirty-three and one-third percent cap, not to exceed $250, on the amount of attorney's fees awardable in lawsuits instituted in the district courts on written contracts. In 1959, the legislature extensively revised the statute to, among other things, reduce the amount of attorney's fees which could be awarded, prohibit the collection of such fees unless collection was provided for by a written instrument, prohibit the practice of pyramiding fees, and apply the cap on attorney's fees to lawsuits brought in both the district and the circuit courts. Act 218, § 1, 1959 Haw. Sess. Laws 146. In rec-

**120**

ommending passage of the bill which was ultimately enacted as Act 218, the House Judiciary Committee stated in pertinent part as follows: ["]Your Committee finds . . . that an attorney's fee.. of thirty-three and one-third per cent is a heavy burden to place on a debtor. . . .["] Hse. Stand. Comm. Rep. No. 103, in 1959 House Journal at 617.

(Some ellipsis points in original and some added.) Whereas the *Food Pantry* rule was designed to address "the inequity of enforcing the twenty-five percent statutory ceiling on an award of nominal damages," *Amfac,* 74 Haw. at 134, 839 P.2d at 35, it was not meant to undermine the legislative goal of circumscribing attorney's fee awards where the amount of the potential judgment is ascertainable.

■ In this case, the Piedvaches filed and tried their lawsuit in the district court. HRS § 604–5(a) (Supp.1995) provides in relevant part that, "[e]xcept as otherwise provided, the district courts shall have jurisdiction in all civil actions where the debt, amount, damages, or value of the property claimed does not exceed $20,000[.]" Thus, as a jurisdictional matter, the district court in this case could have awarded the Piedvaches no more than $20,000.00 on all of their claims, no matter how extensive their actual damages. The Knabusches assert that Rodney "could have sued for $20,000 on each Count and still remain[ed] within the jurisdictional limits of the District Courts, yet the amount sued for would be $80,000." The Knabusches, however, cite no authority for this dubious proposition, and it is not supported by the plain language of HRS § 604–5(a), which expressly mandates that jurisdiction be limited to cases in which no more than $20,000.00 is claimed in a complaint. Accordingly, the maximum possible award of attorney's fees that Rodney could have obtained, had he prevailed, was twenty-five percent of $20,000.00, or $5,000.00.

Just as it would be "inequitable" to deny a prevailing defendant *any* award of attorney's fees merely because no monetary amount has been sued for in his opponent's pleadings, it would be equally inequitable to award a prevailing defendant attorney's fees in an

amount nearly twice that which the plaintiff could have recovered had he or she prevailed. Where, as here, the maximum possible judgment is capable of determination, it should serve as a limit on the amount of the defendant's attorney's fees pursuant to HRS § 607–14.

For this reason, the holding of *Smothers v. Renander,* 2 Haw.App. 400, 633 P.2d 556 (1981), relied upon by the Knabusches, is distinguishable. In *Smothers,* the ICA held that the prevailing plaintiff was entitled to attorney's fees unrestrained by the twenty-five percent cap set forth in HRS § 607–17 with regard to its defense against the defendant's counterclaim for breach of contract because

> [t]he record indicate[d] that [the defendant] never did attach a value to the breach. All he did was suggest that because of the breach he was not in default in the payment of the $55,125.00 which the court found due. Thus, it appears that [the defendant's] counterclaim involved an adjudication of rights in which no monetary liability was at issue. In such case, *Food Pantry* provides that the successful party is entitled to an unlimited reasonable fee for services reasonably and necessarily incurred. Consequently, Renander's counterclaim has no HRS § 607–17 (1976) ceiling.

*Id.* at 407, 633 P.2d at 562–63. As in the instant case, the counterclaim in *Smothers* did not indicate a monetary amount. However, unlike the Piedvaches' complaint in this case, the defendant in *Smothers* apparently failed to request monetary damages in his counterclaim, and there was no readily ascertainable maximum judgment that the defendant might have received had he prevailed on his counterclaim. In the instant case, the Piedvaches prayed for "damages in an amount to be proven at trial," which clearly indicated that "monetary liability was at issue."

Alternatively, the Knabusches argue that the district court's award was justified pursuant to HRS § 607–14.5 (1993), which provides:

> **Attorneys' fees in civil actions.** (a) In any civil action in this State where a party

seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees, in an amount to be determined by the court upon a *specific finding* that the party's claim or defense was frivolous.

(b) In determining the award of attorney's fees and the amounts to be awarded, *the court must find in writing that all claims or defenses made by the party are frivolous and not reasonably supported by the facts and the law in the civil action.*

(Emphases added.) The Knabusches contend that the district court's finding that Rodney was "disingenuous in his claim that he could not proceed with his home construction without permanent power" satisfies the precondition, required by HRS § 607–14.5, of a specific finding of frivolousness. This argument is without merit. HRS § 607–14.5(b) contemplates an *express* finding of frivolousness as to "all claims or defenses." The district court's doubt as to whether Rodney was hampered in the construction of his home by the time taken for performance by the Knabusches relates only to the extent of Rodney's damages resulting from the alleged breach of contract. It simply has nothing do with the central issue at trial—whether the Knabusches took an unreasonable amount of time in arranging for electrical power to be brought to the Piedvaches' land.

Accordingly, we hold that the district court abused its discretion in awarding the Knabusches attorney's fees in excess of twenty-five percent of the greatest possible judgment in the case. The Knabusches were entitled to no more than $5,000.00 in attorney's fees.

### IV. CONCLUSION

Based on the foregoing, we vacate the district court's judgment and remand for entry of a new judgment providing for an award of no more than $5,000.00 in attorney's fees to the Knabusches.