**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000172
27-MAY-2026
08:02 AM
Dkt. 82 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

GORDON KNOWLES, Plaintiff-Appellant, v.
HAWAII PACIFIC UNIVERSITY, Defendant-Appellee, and
JOHN DOES 1-5; JANE DOES 1-5; DOE CORPORATIONS 1-5;
DOE PARTNERSHIPS 1-5; DOE NON-PROFIT ORGANIZATIONS 1-5; and
DOE GOVERNMENTAL AGENCIES 1-5, Defendants

NO. CAAP-24-0000172

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC181001241)

MAY 27, 2026

NAKASONE, CHIEF JUDGE, LEONARD AND GUIDRY, JJ.

OPINION OF THE COURT BY LEONARD, J.

This appeal stems from the award of attorneys' fees to the defendant after a trial on a two-count complaint seeking relief for an alleged breach of an employment contract and an alleged violation of the Hawaiʻi Whistleblower Protection Act (**HWPA**). We hold, *inter alia*, that it is an abuse of discretion

to award the employer-defendant attorneys' fees in excess of the amount allowable on the claim in the nature of assumpsit, even where an apportionment of fees is impracticable, in light of the express language, purpose, and remedial nature of the HWPA.

Plaintiff-Appellant Gordon Knowles (**Knowles**) appeals from the June 18, 2024 Final Judgment Re: Attorneys' Fees and Taxable Costs Awarded to Defendant[-Appellee] Hawaiʻi Pacific University [(**HPU**)] (**Judgment on Fees**) entered against him by the Circuit Court of the First Circuit (**Circuit Court**).[1]  The Judgment on Fees is vacated and this case is remanded for a recalculation of the amount of attorneys' fees.

I.   BACKGROUND

Knowles was a full-time professor at HPU.  In January of 2014, Knowles's supervisor, Dr. Carlos Suarez (**Dr. Suarez**), learned that Knowles was also teaching at the University of Hawaiʻi and Honolulu Community College, in violation of HPU's Conflict of Interest Policy.  Dr. Suarez discussed this violation with Knowles.  Knowles replied that he was being unfairly "targeted" and that HPU learned of Knowles's outside employment because someone was "stalking" him.  Knowles was informed that HPU learned of his outside employment because HPU looked at course offerings from other schools, not because of stalking.

---

[1]     The Honorable Karin L. Holma presided.

In June of 2014, HPU offered Knowles a Regular Faculty position for a five-year period from August 16, 2014, to August 15, 2019. On October 30, 2014, Knowles sought a Temporary Restraining Order (**TRO**) against several HPU faculty, alleging stalking. The TRO was denied. In November of 2014, HPU received reports from Knowles about stalking and initiated an internal investigation. The investigator concluded that Knowles's stalking claims were unfounded. Knowles failed to attend three meetings scheduled with a faculty member to address Knowles's allegations of stalking and noncompliance with HPU policy. Thereafter, Knowles was placed on unpaid administrative leave. On March 20, 2015, HPU informed Knowles that they would seek his dismissal. On March 23, 2015, Knowles again sought a TRO against HPU officials. This request was also denied.

On June 19, 2015, HPU terminated Knowles's employment, citing Knowles's violation of HPU's Conflict of Interest Policy and his failure to attend mandatory meetings. In December of 2016, after exhausting his administrative remedies, Knowles filed a Complaint in the United States District Court for the District of Hawaiʻi (**USDC**), alleging Retaliation under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, violation of the HWPA, Hawaii Revised Statutes (**HRS**) § 378-62 (2015), and breach of contract. In response to an HPU discovery request

concerning the amount of damages Knowles sought in the USDC suit, Knowles stated, *inter alia*:

> I had worked at [HPU] for **seventeen years**. During that time, my 401K had reached $200,000. Based upon my plan to work at [HPU] until 62, it would have reached a projected $600,000 *(age 47 to 62= 15 years of additional employment)*. Additionally, my annual salary at HPU was $62,000. Based upon working at HPU until age 62, with an annual income of $62,000 for the next 15 years would be **$930,000**.
>
> I had to "cash out" **$114,619.16** of my 401K to afford health insurance for my cancer treatments and psychiatric care[.]

On July 10, 2018, the USDC suit concluded after the federal court granted summary judgment in favor of HPU on the Civil Rights Act claim and dismissed the remaining claims without prejudice.

On August 8, 2018, Knowles filed a two-count complaint against HPU in the Circuit Court, alleging breach of his employment contract and violation of the HWPA (**Complaint**). The Complaint did not pray for a specific amount of damages. A bench trial was held on October 30 and 31, 2023.[2] In Knowles's proposed Findings of Fact and Conclusions of Law, Knowles asserted that his damages from HPU's breach of his employment contract were $213,099. Thereafter, the Circuit Court ruled against Knowles and entered judgment in favor of HPU on all claims.

---

[2] The Honorable Jeffrey P. Crabtree presided.

On February 28, 2024, HPU filed a Motion for Attorneys' Fees and Taxable Costs, requesting $258,818.22 in fees pursuant to, *inter alia*, HRS § 607-14 (2016). HPU argued that this amount was less than 25% of the amount Knowles identified in his USDC interrogatory response, *i.e.*, $930,000, plus $114,619.16. Knowles opposed HPU's motion, arguing, *inter alia*, that an award of attorneys' fees should be reduced by the $87,116.72 in fees attributable to the USDC suit. In addition, Knowles argued that an award of fees should be limited to 25% of $213,099, the amount Knowles sought on the breach of contract claim. In reply, HPU argued that the fees accrued for assumpsit and non-assumpsit claims were inextricably intertwined and could not be apportioned because, as evidenced by the billing records, attorney time was generally devoted to the litigation as a whole.

On May 24, 2024, the Circuit Court entered an Order Granting in Part and Denying in Part [HPU's] Motion for Attorneys' Fees and Taxable Costs (**Order re Attorneys' Fees**). The Circuit Court found that the case was in the nature of assumpsit and the claims were so inextricably intertwined that it was impracticable to apportion them between the assumpsit and non-assumpsit claims. Based on HRS § 607-14 (only), the Circuit Court awarded attorneys' fees to HPU in the amount of $180,583.50. Knowles timely filed a notice of appeal.

5

II. POINT OF ERROR

Knowles raises a single point of error on appeal, arguing that the Circuit Court erred when it awarded HPU's attorneys' fees in the amount of $180,583.50.

III. APPLICABLE STANDARD OF REVIEW

We review the Circuit Court's grant or denial of attorneys' fees for an abuse of discretion. Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawaiʻi 251, 266, 151 P.3d 732, 747 (2007). "A court abuses its discretion if it clearly exceeded the bounds of reason or disregarded rules or principles of law or practice[.]" State v. Enos, 147 Hawaiʻi 150, 163, 465 P.3d 597, 610 (2020).

IV. DISCUSSION

It is well-established that under the American Rule, each party is generally responsible for his or her own attorneys' fees. Cowan v. Exclusive Resorts PBL1, LLC, 156 Hawaiʻi 268, 273, 574 P.3d 288, 293 (2025). Attorneys' fees are shifted to the losing party only when authorized by statute, court rule, agreement, or case law. Id. HRS § 607-14 provides, in relevant part:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.] The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment . . . and upon the amount sued for if the defendant obtains judgment.

Assumpsit is "a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 264, 990 P.2d 713, 734 (1999) (quoting Schulz v. Honsador, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984)). In determining whether to award fees under HRS § 607-14 in a suit that includes both assumpsit and non-assumpsit claims, a court must determine whether the nature of the suit sounds in assumpsit. Id. "Furthermore, in awarding attorneys' fees in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, if practicable, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims." Id.

To determine whether an action is in assumpsit, Hawaiʻi courts look to "the essential character of the underlying action in the trial court." Leslie v. Est. of Tavares, 93 Hawaiʻi 1, 5, 994 P.2d 1047, 1051 (2000). "The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." Blair v. Ing, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189 (2001) (citation omitted).

Suits that seek damages for the failure to perform a contract are generally in the nature of assumpsit. See Hong v. Kong, 5 Haw. App. 174, 182-83, 683 P.2d 833, 841 (1984)

7

(rescission and restitution are in the nature of assumpsit).  On the other hand, common law actions that sound in tort are not actions in the nature of assumpsit.  <u>Blair</u>, 96 Hawaiʻi at 332, 31 P.3d at 189.  Statutory causes of action that do not provide for damages based on an underlying contract are not actions in assumpsit.  <u>808 Dev., LLC v. Murakami</u>, 111 Hawaiʻi 349, 366, 141 P.3d 996, 1013 (2006); <u>TSA Int'l Ltd.</u>, 92 Hawaiʻi at 264, 990 P.2d at 734.

For example, the Hawaiʻi Supreme Court has held that a suit brought under the mechanic's lien statute is not in the nature of assumpsit.  <u>Murakami</u>, 111 Hawaiʻi at 366, 141 P.3d at 1013.  The supreme court reasoned that the mechanic's lien statute was not a common law claim and the statute's remedy, lien attachment, was not akin to contract damages.  <u>Id.</u>

It is undisputed that Knowles's breach of employment contract claim is in the nature of assumpsit.  However, Knowles's HWPA claim is statutory in nature, based on the following:

> **§ 378-62  Discharge of, threats to, or discrimination against employee for reporting violations of law.**  An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> > (1)  The employee, or a person acting on behalf of the employee reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
> >
> > > (A)  A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States[.]

HRS § 378-62 (2015).

8

The HWPA provides for statutory remedies as follows:

> **§ 378-64  Remedies ordered by court.**  A court, in rendering a judgment in an action brought pursuant to this part, shall order, as the court considers appropriate, reinstatement of the employee or public employee, payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies.  A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney's fees and witness fees, if the court determines that the award is appropriate.

HRS § 378-64 (2015).

A claim under HWPA does not sound in assumpsit.  Akin to the mechanic's lien claim discussed in <u>Murakami</u>, an HWPA claim does not arise from a common law cause of action or a contractual promise.  Instead, the statute imposes an independent legal duty on employers:  an employer may not "discharge, threaten, or otherwise discriminate against an employee" because the employee reports a violation of "a law, rule, ordinance, or regulation[.]" HRS § 378-62(1)(A).  And, it provides unique remedies tailored to its remedial purpose, such as reinstatement to position, seniority, and fringe benefits.  <u>See</u> HRS § 378-64.  Notably, if appropriate, HRS § 378-64 allows for an award of litigation costs, including attorneys' fees, to an HWPA complainant – without any reciprocal provision allowing an award of such costs to an HWPA defendant.

Accordingly, Knowles brought both assumpsit and non-assumpsit claims.  "[I]n awarding attorneys' fees in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, if practicable, on an apportionment of

9

the fees claimed between assumpsit and non-assumpsit claims." Blair, 96 Hawaiʻi at 332, 31 P.3d at 189. Apportionment may not be practicable, however, where the claims are "inextricably linked." Id. at 333, 31 P.3d at 190.

This court has acknowledged that "there is no prescribed method of determining when claims are too closely related to segregate them[.]" Porter v. Hu, 116 Hawaiʻi 42, 67, 169 P.3d 994, 1019 (App. 2007). However, the general inquiry revolves around whether the prosecution or defense of a claim was devoted "to the litigation as a whole," making it difficult to allocate the hours on a claim by claim basis. Id. at 68, 169 P.3d at 1020 (citation omitted). Hawaiʻi courts look to the incident(s) giving rise to litigation, whether the claims arise from the same common core of facts, and whether "counsels' time was devoted largely to the litigation as a whole and not divisible into discrete slivers neatly matching each claim advanced." Id. at 69, P.3d at 1021. In cases where attorneys' fees are recoverable on one cause of action but not another, apportionment may not be required where "nearly every fact in [the] case relate[s] in some way" to the other claims. Id.

Here, the gravamen of Knowles's claims is that HPU violated his employment contract and the HWPA by terminating his employment due to his allegations that he was being unfairly targeted, subjected to workplace violence, and stalked. HPU argued that it terminated Knowles because Knowles breached their

10

contract by engaging in outside employment and insubordination. The same factual allegations underlie both of Knowles's claims and the defense to both claims. A review of the HPU's attorney time sheets shows that the claims were not defended independently of one another. Thus, it appears that this is not a case that we can divide "into discrete slivers neatly matching each claim advanced." See Porter, 116 Hawaiʻi at 69, 169 P.3d at 1021.

Nonetheless, legislative intent and equitable principles compel some limitation on the total amount of attorneys' fees in this case. Looking to the legislative history of HRS § 607-14's predecessor statute, the supreme court has stated that "in enacting HRS § 607-17 (and in amending HRS § 607-14 to incorporate the provisions of HRS § 607-17), the legislature's purpose was to place some limit on the amount of attorney's fees that a prevailing party could reasonably recover." Piedvache v. Knabusch, 88 Hawaiʻi 115, 119, 962 P.2d 374, 378 (1998). The supreme court noted:

> The legislative history of HRS § 607-17 indicates clearly . . . that the statute was intended to prohibit the collection of excessive attorney's fees[.]
> HRS § 607-17 had its genesis in Act 194, § 1, 1955 Haw. Sess. Laws 171, which imposed a thirty-three and one-third percent cap, not to exceed $250, on the amount of attorney's fees awardable in lawsuits instituted in the district courts on written contracts. In 1959, the legislature extensively revised the statute to, among other things, reduce the amount of attorney's fees which could be awarded, prohibit the collection of such fees unless collection was provided for by a written instrument, prohibit the practice of pyramiding fees, and apply the cap on attorney's fees to lawsuits brought in both the district and the circuit courts. Act 218, § 1, 1959 Haw. Sess. Laws 146. In recommending passage of the bill which was ultimately enacted as Act 218, the House Judiciary Committee stated in pertinent part as follows: ["]Your Committee

> finds . . . that an attorney's fee . . . of thirty-three and one-third per cent is a heavy burden to place on a debtor[."]  Hse. Stand. Comm. Rep. No. 103, in 1959 House Journal at 617.

Id. at 119-20, 962 P.2d at 378-79 (citation omitted).

The supreme court recognized that the "legislative goal" of HRS § 607-14, and its predecessor statute, was to "circumscrib[e] attorney's fees awards where the amount of the potential judgment is ascertainable."  Id. at 120, 962 P.2d at 379.  The supreme court concluded:

> Just as it would be "inequitable" to deny a prevailing defendant any award of attorney's fees merely because no monetary amount has been sued for in his opponent's pleadings, it would be equally inequitable to award a prevailing defendant attorney's fees in an amount nearly twice that which the plaintiff could have recovered had he or she prevailed. **Where, as here, the maximum possible judgment is capable of determination, it should serve as a limit on the amount of the defendant's attorney's fees pursuant to HRS § 607-14.**

Id. (emphasis added).

Here, notwithstanding that Knowles's assumpsit and non-assumpsit claims are inextricably intertwined, there is a determinable maximum that should limit the amount of attorneys' fees recoverable under HRS § 607-14.  "The measure of recovery by a wrongfully discharged employee is the amount of compensation agreed upon for the remaining period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment."  Vieira v. Robert's Hawaiʻi Tours, Inc., 2 Haw. App.

237, 239, 630 P.2d 120, 122 (1981).[3] Knowles's contract ran from August 16, 2014, to August 15, 2019. Thus, for his claim sounding in assumpsit, Knowles was only potentially entitled to "future pay" on his employment contract from the date of his termination on June 19, 2015, until the employment contract expired on August 15, 2019. Therefore, we conclude that the maximum possible damages Knowles could have received based on the breach of contract claim is determinable.

In addition, we are cognizant of the well-established public policy behind remedial, fee-shifting statutes. "[F]ee-shifting statutes are generally enacted to 'strengthen the enforcement of selected . . . laws by ensuring that private persons seeking to enforce those laws [can] retain competent counsel.'" Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 449 n.89, 32 P.3d 52, 93 n.89 (2001) (citation omitted); see also Wiginton v. Pac. Credit Corp., 2 Haw. App. 435, 446, 634 P.2d 111, 120 (1981)("Although one purpose of granting attorney's fees is to make the plaintiff whole, another purpose is to encourage private enforcement of certain statutes."). For example, in the context of Hawaii's Sunshine Law, the supreme court noted:

> The main purpose behind HRS § 92-12(c) was to encourage citizens to pursue claims of violations of the sunshine law, and an award of attorneys' fees against a citizen who challenged a sunshine law violation and lost

---

[3] We also note that there is no provision that allows a plaintiff to recover future pay under the HWPA. See HRS § 378-64.

13

> would have a "'chilling effect' and deter citizens from
> filing HRS § 92-12(c) suits in the future."

Kahana Sunset Owners Ass'n v. Maui Cnty. Council, 86 Hawaiʻi 132,

136 n.4, 948 P.2d 122, 126 n.4 (1997).

The HWPA is a remedial statute that should be construed

liberally to "accomplish the purpose for which it was enacted."

Crosby v. State Dep't of Budget & Fin., 76 Hawaiʻi 332, 342, 876

P.2d 1300, 1310 (1994).  The legislative history confirms that,

like other statutes that allow for one-sided fee shifting, the

HWPA was enacted to encourage enforcement of the law:

> The purpose of this bill is to provide protection to
> employees in the private and public sectors who report
> suspected violations of law from any form of retaliation by
> their employers.
>
> Your Committee on Judiciary heard testimony from the
> State Ethics Commission strongly supporting this bill.  Your
> Committee agrees that providing protection to government
> employees and citizens who are willing to "blow the whistle"
> when they are aware of ethical or other violations of law
> will help the State maintain high standards of ethical
> conduct.

Sen. Stand. Comm. Rep. No. 1127, in 1987 Senate Journal at 1392.

Defendants are entitled to only limited fees under HRS

§ 607-14 and they are not entitled to any fees under the HWPA.

It would therefore be inequitable to allow a defendant to recover

fees beyond HRS § 607-14's 25% limit merely because a plaintiff

also asserted an HWPA claim.  As noted above, the HWPA allows

plaintiffs, and plaintiffs alone, to recover attorneys' fees in

order to encourage employees to 'blow the whistle' on illegal

conduct.  Id.  Allowing defendants to recover fees for the

defense of an HWPA claim would have a "chilling effect" like the one the supreme court sought to avoid in <u>Kahana Sunset</u>, and undermine the legislative intent to "provide protection to employees."  Sen. Stand. Comm. Rep. No. 1127, in 1987 Senate Journal at 1392.  Thus, we hold that the Circuit Court abused its discretion in failing to limit HPU's attorneys' fees award to an amount based on the maximum possible judgment on Knowles's breach of contract claim.

Finally, we note that, to the extent that it did so, the Circuit Court clearly erred in determining the amount sued for in this case – and in turn determining the allowable amount of attorneys' fees – based on Knowles's interrogatory response in the USDC suit, rather than, for example, Knowles's requested damages in his proposed Findings of Fact and Conclusions of Law in this case.  Upon remand, the proper inquiry involves the amount of damages sought in this case based on Knowles's breach of contract claim against HPU, without regard to any additional relief that might have provided under the HWPA.

V.   CONCLUSION

Based on the foregoing, the Circuit Court's June 18, 2024 Judgment on Fees and May 24, 2024 Order re Attorneys' Fees are vacated and this case is remanded to the Circuit Court for a

recalculation of the award of attorneys' fees consistent with this Opinion.

DATED:  Honolulu, Hawaiʻi, May 27, 2026.

On the briefs:

Charles H. Brower,
Michael P. Healy,
for Plaintiff-Appellant

Anna Elento-Sneed,
Samantha M.P. Sneed,
(ES&A, Inc.),
For Defendant-Appellee

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge